**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Margaret Kris

     v.                                    Civil No. 18-cv-566-LM

Dusseault Family Revocable Trust et al.[1]

**REPORT AND RECOMMENDATION**

     Before the court is plaintiff Margaret Kris's complaint
(Doc. No. 1); two motions seeking preliminary injunctive relief
(Doc. Nos. 2, 4); and a notice/motion (Doc. No. 5) regarding her
contacts with the U.S. Department of Housing and Urban
Development ("HUD").  This case arises out of an eviction
proceeding Kris contends was undertaken in retaliation for her
complaints to the local public housing authority.  The
defendants to this action are Charlene Dusseault, Frances
Dusseault, and the Dusseault Family Revocable Trust ("Dusseault
Trust") (the landlord that evicted her); the Dusseault Trust's
counsel, Attorney Sean Curran; and HUD.  The complaint and the
factual assertions in Document Nos. 2, 4, and 5 are here for
preliminary review under LR 4.3(d)(2) and 28 U.S.C.
§ 1915(e)(2).  Kris's motions for preliminary injunctive relief

_____

     [1]Plaintiff has identified the Dusseault Family Revocable
Trust and its counsel, Attorney Sean Emmet Curran, as the
defendants in the complaint's caption.  The Order issued this
date adds HUD, Charlene Dusseault, and Frances Dusseault as
defendants.

have been referred to the magistrate judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  See June 21, 2018 Order; July 13, 2018 Order.

## Background

Kris, who has a hearing impairment and other disabilities, was a tenant in an apartment with a driveway parking space, in Manchester, New Hampshire.  The apartment was owned by Frances Dusseault and/or the Dusseault Trust.  Kris's rent was subsidized by the Manchester Housing and Redevelopment Authority ("MHRA") under the HUD Section 8 program.[2]  Kris's lease started on September 15, 2017.  Kris was evicted in July 2018.

Kris asserts that the building had a bedbug issue that the landlord did not disclose before Kris moved in.  On October 5, 2017, Kris reported to the MHRA that her building needed extermination, and she noted that she had a breathing problem (COPD) and a "support animal" that could be harmed by chemical exposure.  Oct. 5, 2017 MHRA Request for Reasonable Accommodation (Doc. No. 1-1, at 38).

---

[2]"Under the Section 8 Federal Housing Choice Voucher Program . . . HUD provides housing assistance funding to state and local public housing authorities, which in turn administer the Program at the local level by making rent subsidy payments to landlords on behalf of participating tenants."  DeCambre v. Brookline Hous. Auth., 826 F.3d 1, 4 (1st Cir. 2016) (citing 24 C.F.R. § 982.1(a)(1)–(2)).

In a letter addressed to MHRA agent Deb Butterworth, dated December 11, 2017, Kris complained about maintenance issues in her apartment, the behavior of other tenants, and ice in the driveway. See Dec. 11, 2017 Ltr. to Deb Butterworth, MHRA (Doc. No. 1-1, at 39). A winter parking notice signed by Frances Dusseault on December 16, 2017, notified tenants that they needed to remove their cars from the driveway when it snowed more than three inches, to allow for snowplowing. See Doc. No. 1-1, at 44. In a January 4, 2018 letter to the MHRA, Kris complained that the snowplow honking its horn in the driveway did not give her adequate notice of the need to move her car, as she is deaf in one ear. See Jan. 4, 2017 Ltr. to Deb Butterworth, MHRA (Doc. No. 1-1, at 45).

Kris has further alleged that on an unspecified date in January 2018, Frances Dusseault and Charlene Dusseault came to Kris's apartment to "admonish" Kris for reporting them to the MHRA. Doc. No. 1-2, at 35. Kris asserts that Charlene and Frances "verbally assaulted" her, and that Frances grabbed Kris's arm and pushed it out of the away, using her fingernails, as Kris approached her carrying a cup to the sink. Doc. No. 1-2, at 33-34; Doc. No. 1-1, at 31; Doc. No. 1-2, at 18. Kris then asked Frances and Charlene to leave, and reported the incident to the police as an assault. See Doc. No. 1-2, at 34. Kris asserts that she did not receive any response to any of her

complaints to the landlord reporting maintenance issues, after that incident.  See Doc. No. 1-2, at 33; Doc. No. 1-1, at 31.

Kris withheld rent in February/March 2018.  See Doc. No. 1-1, at 40; Doc. No. 1-1, at 18.  On March 2, 2018, Attorney Sean Curran, on behalf of the Dusseault Trust, filed a state court proceeding to evict Kris, see Dusseault Family Rev. Tr. of 2017 v. Kris, No. 456-2018-LT-00234 (9th Cir. Dist. Div., Manchester, filed Mar. 2, 2018).  Kris obtained money orders for unpaid rent, which she brought with her to the March 23, 2018 hearing in that case.  See Doc. No. 1-1, at 18.  Those money orders were not accepted, and the Manchester District Court issued a judgment for the landlord on that date.

Kris filed a notice of appeal of the Manchester District Court judgment in the New Hampshire Supreme Court ("NHSC").  See Doc. No. 4, at 8-9.  The NHSC declined to accept that appeal on June 13, 2018, see Dusseault Family Rev. Tr. of 2017 v. Kris, No. 2018-0215 (N.H. June 13, 2018) (Doc. No. 1-1, at 4), and the Manchester District Court issued a writ of possession to the landlord on July 2, 2018.

The record includes a notice, dated April 13, 2018, addressed to Kris at a prior address, stating that Kris was no longer eligible for receipt of electrical assistance payments, administered under the New Hampshire Electric Assistance Program, effective April 1, 2018.  See Doc. No. 1-2, at 3.  Kris

4

asserts that in discussions preceding her signing the lease, Joanne had told Kris that Frances Dusseault would receive and retain Kris's electrical assistance payments.  See Ltr. to Bonnie, MHRA Housing Supervisor, May 14, 2018 (Doc. No. 1-1, at 22).

On March 30, 2018, Kris sent a Fair Housing Act ("FHA") complaint to HUD.  See Doc. No. 1-1, at 1, 17.  Kris checked boxes on that form indicating that she believed she had been discriminated against on multiple bases, including having a handicap or disability.  See id.  Kris asserts here that Robert D. Forti, HUD Intake Branch Chief, responded to that complaint by sending a letter to Kris in July 2018 asking her to provide additional documentation.  See Doc. No. 5, at 1.

Kris filed this action on June 20, 2018, along with her first motion for a preliminary injunction.  See Doc. Nos. 1, 2. Kris claims that HUD and the state courts failed to enforce laws prohibiting disability discrimination, and that judges in the state proceedings were biased.  Kris also asks this court to enjoin the eviction, to compel HUD to respond to her complaint, and to compel HUD to represent her in the eviction proceeding and to pursue an enforcement action against the Dusseaults.

Kris filed a second motion for preliminary injunctive relief in this case on July 13, 2018.  See Doc. No. 4.  In that motion, she asserts that she went to the apartment on July 11,

2018, and found it marked with a sheriff's sticker.  Kris
entered the apartment to retrieve her belongings.  Kris asserts
that six Manchester Police Department officers arrived on the
scene, threw her against a porch railing, and handcuffed her.
Kris further asserts that MPD officers did not allow her to
receive medical attention at that time.  See Doc. No. 5.  Kris
was charged with resisting arrest, criminal trespass, and
disturbing the peace.  See Doc. No. 4.

Kris further asserts that she was sent to the Hillsborough
County Department of Corrections ("HCDOC") on July 11, and that
after her arrival, while changing her clothes at the direction
of a corrections officer ("C.O."), Kris was falsely accused of
attempting to assault a C.O.  HCDOC officers then pepper-sprayed
Kris and slammed her head against the floor.  Doc. No. 4, at 4-
5.  A C.O. stepped on her bare foot, breaking her toe.  Id. at
5.  She asserts that a contusion on her elbow resulting from the
arrest was aggravated by the HCDOC assault.  Id.  Kris asserts
she was released the next day without adequate removal of the
pepper spray.  Id.  She alleges that while at the HCDOC she
asked for a grievance form and a Bible, which she did not
receive.  See id.

Kris asserts that her bail conditions require her to stay
away from the apartment, see Doc. No. 4, at 5, and that she is
temporarily living with her son.  See Doc. No. 4, at 3, 5.  Kris

6

also asserts that she has filed a motion in the Manchester
District Court asking for assistance in recovering her security
deposit.  See Doc. No. 4, at 1, 7.


Claims

Kris asserts the following claims in Doc. Nos. 1, 2, 4 & 5:

1.   Failing to execute duties under the Fair Housing Act
("FHA"), 42 U.S.C. § 3610(g):

    a.   HUD has not completed its investigation of Kris's
    March 30, 2018 FHA complaint; and

    b.   HUD failed to represent Kris in the eviction
    proceedings and failed to take action against the
    landlord.

2.   Frances Dusseault, the Dusseault Family Revocable
Trust, and Attorney Sean Curran violated Kris's rights
under the Americans with Disabilities Act ("ADA") and the
FHA, in that:

    a.   Kris did not receive notice of the building's
    bedbug infestation, despite Kris's breathing problems
    and "support animal" that could be affected by
    chemical exposure;

    b.   The landlord did not take steps to provide Kris
    with adequate notice to move her car to avoid having
    it plowed in, to accommodate Kris's hearing
    impairment;

    c.   In negotiations preceding Kris's signing of the
    lease, Frances Dusseault's daughter Joanne said that
    Frances would take care of Kris's electrical
    assistance payments, although Kris's eligibility for
    such payments was allowed to lapse, in retaliation for
    Kris's action in contacting the MHRA;

    d.   After receiving notice that Kris had contacted
    the MHRA to complain about the apartment and to
    request assistance in resolving issues relating to

Kris's disabilities, in retaliation for Kris's action in contacting the MHRA:

> i.   Charlene and Frances Dusseault appeared at Kris's apartment, "verbally assaulted" Kris, and Frances pushed Kris's arm away forcefully;
>
> ii.  The landlord stopped responding to Kris's complaints about maintenance issues;
>
> iii. The landlord evicted Kris; and
>
> iv.  The landlord withheld Kris's security deposit.

3.   Biased state court judges in the landlord-tenant court proceedings denied Kris due process, rendering the judgment in that case invalid.

4.   On July 11, 2018, Kris was subjected to excessive force and denied medical attention when she was arrested by the MPD, in violation of her federal constitutional rights.

5.   On July 11-12, 2018, Kris was subjected to excessive force and denied access to grievances and a Bible, in violation of her federal rights.

## Discussion

I.   Preliminary Review

A.   Standard

The court may dismiss claims asserted in a complaint filed in forma pauperis, if the court lacks jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per

curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court treats as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

      B.   HUD Claims

Liberally construed, Kris's complaint asserts claims that HUD failed to perform duties required by the FHA.  The Mandamus and Venue Act provides that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "[T]o be entitled to mandamus relief, a movant must show that: (1) his claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other remedy offering adequate relief is available."  Khitab v. Novak, 524 F. Supp. 2d 105, 106-07 (D. Mass. 2007); see also Georges v. Quinn, 853 F.2d 994, 995 (1st Cir. 1988).  The writ of mandamus is an extraordinary remedy to be invoked only in exceptional

circumstances.   See In re City of Fall River, 470 F.3d 30, 32
(1st Cir. 2006).


1.   Response to HUD Complaint (Claim 1(a))

In her initial complaint (Doc. No. 1) and in her motions
for preliminary injunctive relief (Doc. Nos. 2, 4), Kris alleged
that HUD had not responded to her administrative complaint, and
she sought an order compelling HUD to do so.  In a later filing,
however, Kris has notified the court that HUD has contacted her
in writing, stating that HUD is in the process of conducting an
investigation into her complaint, which it has assigned HUD Case
No. 559326.  See Doc. No. 5, at 1.  Kris asserts that HUD has
directed her to send HUD copies of additional documents relating
to her HUD complaint.  See Doc. No. 5, at 1.

Under the FHA, individuals who believe they have been
subjected to a discriminatory housing practice can file a
complaint with HUD within one year of the alleged
discrimination.  See 42 U.S.C. § 3610(a)(1)(A)(i).  HUD must
determine, within 100 days after the filing of the complaint,
"whether reasonable cause exists to believe that a
discriminatory housing practice has occurred or is about to
occur."  Id. § 3610(g).  The 100-day deadline for completing the
investigation does not apply if that time period is
"impracticable," Id. § 3610(a)(1)(B), 3610(g).  In circumstances

where HUD is unable to complete its investigation within 100
days, HUD must notify the complainant and respondent in writing
of its reasons for not doing so.  Id. § 3610(a)(1)(C), 3610(g).

Here, the 100-day time period appears to have ended on or
about July 5, 2018.  The record before the court indicates that
HUD notified Kris in writing in a letter delivered to Kris
before July 24, 2018, that HUD needed to review additional
documents in Kris's possession, in connection with its
investigation of her complaint.  Under such circumstances, Kris
has not pleaded the facts necessary to demonstrate that HUD has
not responded to her HUD complaint as required by the FHA.
Accordingly, Claim 1(a) should be dismissed.


            2.    Enforcement and Representation (Claim 1(b))

Kris also seeks an order compelling HUD to file an
enforcement action and represent her in connection with the
state court landlord-tenant matter.  As there has been a final
judgment in the landlord-tenant matter, Kris's request for
representation in that matter is moot.

To the extent Kris seeks to compel HUD to proceed on an FHA
enforcement action, that claim is not cognizable in a mandamus
petition, as HUD has no duty to do so.  "HUD is granted
substantial discretion to determine whether to pursue an
enforcement action."  Wilder v. Preston, No. CIV. RDB-09-155,

2009 WL 4062347, at *3, 2009 U.S. Dist. LEXIS 109191, at *9 (D.
Md. Nov. 23, 2009) (citing Heckler v. Chaney, 470 U.S. 821, 831
(1985) ("an agency's decision not to prosecute or enforce,
whether through civil or criminal process, is a decision
generally committed to an agency's absolute discretion")); see
generally 42 U.S.C. § 3610 (HUD Secretary's enforcement
authority).  Accordingly, the district judge should dismiss
Claim 1(b), and HUD should be terminated as a defendant as no
viable claims have been asserted against HUD in this case.


        C.   Housing Discrimination (Claim 2)

        Claim 2 summarizes Kris's allegations of disability
discrimination under the ADA and the FHA.  Those claims are
asserted against defendants Charlene and Frances Dusseault, the
Dusseault Trust, and Attorney Sean Curran.


        1.   ADA Claims

        The ADA's provisions, which prohibit disability
discrimination in employment under Title I, in a "public
accommodation" under Title III, and by state and local
governmental agencies under Title II, do not provide Kris with a
cause of action for her housing discrimination claims.  See 42
U.S.C. § 12131(1) (defining public entities for purposes of ADA
Title II); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 264

                            12

n.5 (E.D.N.Y. 2009) ("receipt of Section 8 housing vouchers is
an insufficient basis upon which to deem . . . a private,
residential apartment complex" a place of "public
accommodation"); see also Regents of Mercersburg Coll. v.
Republic Franklin Ins. Co., 458 F.3d 159, 165 n.8 (3d Cir. 2006)
("residential facilities such as apartments and condominiums are
not . . . subject to ADA compliance"); Indep. Hous. Servs. v.
Fillmore Ctr. Assocs., 840 F. Supp. 1328, 1344 n.14 (N.D. Cal.
1993).  Cf. Reyes, 661 F. Supp. 2d at 264 (landlord's receipt of
Section 8 vouchers does not render landlord subject to
Rehabilitation Act, 29 U.S.C. § 794).  Accordingly, the ADA
claims in Claim 2 should be dismissed.


           2.   FHA Claims

     The FHA provides, in pertinent part, that it is unlawful
"[t]o discriminate against any person . . . in the provision of
services or facilities in connection with [a] dwelling," because
of that person's "handicap," 42 U.S.C. § 3604(f)(2).  The FHA
provides a private right of action for an alleged discriminatory
housing practice, including a practice that violates § 3604.
See 42 U.S.C. § 3613(a)(1)(A).  The FHA "contemplates three
types of claims for perceived discrimination: 'disparate
treatment, disparate impact, and failure to make reasonable
accommodations.'"  Batista v. Cooperativa de Vivienda Jardines

de San Ignacio, 776 F.3d 38, 43 (1st Cir. 2015) (citation omitted).

To assert a claim of disparate treatment under the FHA, a plaintiff must allege facts showing that defendants intentionally discriminated against her.  See id.  "Handicap" discrimination, prohibited by the FHA, includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3).  As to claims of unlawful retaliation, prohibited by the FHA, that law provides that "a person cannot 'coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of' rights protected under the FHA." S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 95 (D. Mass. 2010) (quoting 42 U.S.C. § 3617).  Section 3617 authorizes claims asserting that adverse actions were taken against the plaintiff for exercising the right to seek redress for housing discrimination prohibited by the FHA.  See Batista, 776 F.3d at 44-45.  To be actionable, an adverse action must be "conduct that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of her protected right under the FHA."  Geraci v. Union Square Condo. Ass'n, 891 F.3d 274, 277 (7th Cir. 2018).

Liberally construed, the complaint asserts claims that defendants intentionally treated Kris less favorably than other tenants, with respect to the terms and conditions of her rental agreement, on the basis of her disabilities; that defendants failed to accommodate Kris's disabilities with respect to the policies and conditions of her tenancy; and that defendants, including the landlord and the landlord's attorney, retaliated against Kris for engaging in conduct protected by the FHA.  The court addresses those claims below.

### 3.   Attorney Sean Curran

The attachments to the complaint indicate that Attorney Curran represented the Dusseault Trust in the eviction proceedings in state court underlying this action which Kris alleges were initiated in retaliation for her complaints to the MHRA.  To make out a prima facie case of retaliation under the FHA,

> a plaintiff must show that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.

See Philippeaux v. Apt. Inv. & Mgmt. Co., 598 F. App'x 640, 644–45 (11th Cir. 2015); cf. D.B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (same elements for ADA retaliation claims).

Although the eviction proceeding was filed after Kris
complained to the MHRA, Attorney Curran is not alleged to have
known of Kris's disabilities or to have been aware that Kris had
contacted the MHRA about the landlord's failure to accommodate
her disabilities, before he filed the eviction proceeding on
behalf of the Dusseault Trust.  Accordingly, Kris's complaint
does not demonstrate that Attorney Curran's actions were caused
by her filing of the MHRA complaint.  Kris, therefore, has
failed to state any FHA retaliation claims against Attorney
Curran, and Attorney Curran should be dropped as a defendant.

### 4.   Bedbug Notice

Claim 2(a) summarizes Kris's allegations that although Kris
had COPD and a "support animal" that could be affected by
chemical exposure, the landlord failed to disclose a bedbug
infestation before she moved in.  Kris alleges she learned of
the bedbug infestation in October 2017, after moving in.

Assuming without deciding that Kris's COPD or other
breathing issues constitute a qualifying "handicap" under the
FHA, this court notes that Kris has not stated any facts showing
that the landlord was aware that Kris had a qualifying
"handicap" before she received notice of the building's bedbug
infestation in October 2017.  The complaint, therefore, does not

state a claim that the failure to provide Kris with prior notice

resulted from disability discrimination.

Kris's contacts with the MHRA relating to the bedbug notice

issue include her recitation of the facts underlying Claim 2(a)

on an MHRA form, entitled "Request for Reasonable

Accommodation."  Doc. No. 1-1, at 38.

> To establish a prima facie case of failure to accommodate
> under the [FHA], a claimant must show that he is
> handicapped within the purview of 42 U.S.C. § 3602(h) and
> that the party charged knew or should reasonably have known
> of his handicap. . . .  Next the claimant must show that he
> requested a particular accommodation that is both
> reasonable and necessary to allow him an equal opportunity
> to use and enjoy the housing in question. . . .  Finally,
> the claimant must show that the party charged refused to
> make the requested accommodation.

Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban

Dev., 620 F.3d 62, 67 (1st Cir. 2010) (citations omitted).

Kris has alleged that she notified the MHRA of her

vulnerability to chemical exposure.  She has failed to plead any

facts, however, indicating that she requested a reasonable

accommodation of her disabilities that the landlord refused to

provide, with respect to the bedbug notice/extermination issue.

Furthermore, Kris has not pleaded a viable retaliation claim

relating to the lack of notice of bedbugs, as she received such

notice in October 2017 before she filed a complaint with the

MHRA relating to any disability.  Therefore, Claim 2(a) fails to

state any claim upon which relief can be granted under the FHA, and the district judge should dismiss Claim 2(a) from this case.

### 5.    Snowplowing Issues

Claim 2(b) summarizes Kris's allegations that assert a violation of the FHA based on a failure to accommodate Kris's hearing disability, in relation to snow removal operations. Plaintiff has filed as an exhibit a written notice sent to tenants in December 2017 stating that they needed to move their cars from the driveway after storms dropping more than three inches of snow, and she has alleged that the snowplow operator upon arriving at the apartment honked its horn to let drivers know that it was there to plow the driveway.  She further asserts that she notified the MHRA in January 2018 that because she was deaf in one ear, she could not hear the snowplow's horn. Liberally construed, her allegations indicate that Kris asked the MHRA to help her with obtaining an accommodation for her hearing disability.  Nothing in the record suggests, however, that Kris proposed any particular means of accommodating her hearing disability with respect to snow removal operations, that the landlord refused to implement.  Accordingly, Claim 2(b) should be dismissed for failure to state a claim under the FHA.

6.   Electrical Assistance Payments

Claim 2(c) summarizes Kris's allegations that
misrepresentations were made to her when Kris signed the lease,
regarding who would take care of receiving Kris's benefits under
the New Hampshire Electric Assistance Program, if the rent
included all utilities.  Kris asserts that Frances Dusseault's
daughter Joanne falsely promised that if Kris signed a lease
including utilities in the rent, Frances Dusseault would take
care of receiving Kris's electrical assistance payments.  The
allegations regarding the discussions preceding Kris's signing
of the lease are insufficient to form the basis of any FHA claim
upon which relief can be granted, as (1) nothing in the record
suggests that at the time the representations were made, Joanne
or any other defendant knew of Kris's disabilities; and (2)
nothing in the record otherwise suggests that the removal of
Kris from the New Hampshire Electric Assistance Program, by a
third party, in April 2018, due to inactivity of an electric
account linked to Kris's old address, resulted from defendants'
discriminatory conduct, prohibited by the FHA.

Kris asserts that the landlord retaliated against her by
allowing her electrical assistance payments to lapse in April
2018, despite promising to take care of receiving those
payments.  The notice of the lapsing of Kris's eligibility for
receipt of electrical assistance in the record, Doc. No. 1-2, at

19

3, indicates that Kris was removed from the program because her
electric utility account associated with an old address had
become inactive.  As Kris has not alleged any facts indicating
that any defendant took steps that caused the electric utility
account to become inactive, after defendants learned of Kris's
complaints to the MHRA, the lapsing of Kris's eligibility for
electrical assistance payments in April 2018 does not provide a
ground upon which a viable FHA retaliation claim can be based.
Accordingly, Claim 2(c) should be dismissed from this action.


### 7.  Assault, Repairs, Eviction, and Security Deposit

Claim 2(d) summarizes Kris's claim that defendants
retaliated against her for complaining to the MHRA, in
connection with: (1) Charlene and Frances Dusseault's verbal and
physical assaults on Kris, alleged to have occurred in January
2018, (2) the landlord's failure to respond to Kris's requests
regarding maintenance issues, (3) the filing of an eviction
action against Kris in the Manchester District Court, and (4)
retention of Kris's security deposit.  Claim 2(d)(i)-(iv),
asserted against Charlene Dusseault, Frances Dusseault, and the
Dusseault Trust, survive this court's preliminary review.
Without prejudice to those defendants' ability to move to
dismiss those claims on any appropriate basis, the Order issued
this date directs service of Claim 2(d)(i)-(iv) upon them.

D.    State Court Proceedings (Claim 3)

Kris asserts that the judges in the state court proceedings were biased against her and denied her due process.  Final judgment has entered in that case.

The Rooker-Feldman doctrine holds that, as a general rule, federal district courts should not sit in direct review of state court decisions.  See D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923).  The Rooker-Feldman doctrine divests this court of jurisdiction over "'cases brought by state-court losers'" complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and "'inviting district court review and rejection of [the state court's] judgments.'"  Skinner v. Switzer, 562 U.S. 521, 532 (2011) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  The plaintiff's "proper recourse," in such cases, "is with the United States Supreme Court; [plaintiff] cannot file a complaint in the federal district court challenging the state court's judgment."  Moore v. Tex. Crim. App., 561 F. App'x 427, 431 (5th Cir. 2014).  As the Rooker-Feldman doctrine applies here, the claims challenging the eviction proceeding should be dismissed.  Accordingly, the district judge should dismiss Claim 3.

E.   <u>Arrest and Detention (Claims 4 and 5)</u>

Kris asserts facts regarding her arrest by the MPD and detention at the HCDOC, which she alleges involved excessive force, a denial of medical care, and other conditions of confinement that violated her federal rights.  "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).  A plaintiff may join multiple defendants in a single action only if the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  7 Charles Alan Wright et al., <u>Fed. Prac. & Proc.</u> <u>Civ.</u> § 1655 (3d ed. 2001).  The defendants to Kris's FHA claims and Claims 4 and 5 are not the same; Claims 4 and 5 arise out of different occurrences involving MPD and HCDOC officers; and Claims 4 and 5 are not otherwise properly joined with Kris's remaining claims.  Accordingly, without expressing any opinion as to whether Kris has stated any claim upon which relief can be granted, Claims 4 and 5 should be dismissed without prejudice, as those claims are not properly joined in this action.


II.  <u>Preliminary Injunction</u>

Kris has filed two motions for preliminary injunctive relief in this case.  <u>See</u> Doc. Nos. 2, 4.  Kris asks this court:

(1) to direct HUD and the state courts to enforce federal laws;
(2) to direct HUD to respond to her complaint and either to
represent her in the eviction proceeding or to take action
against the landlord; (3) to enjoin the state court eviction
proceedings; and (4) to order the landlord to return her
security deposit.

"'A plaintiff seeking a preliminary injunction must
establish that [she] is likely to succeed on the merits, that
[she] is likely to suffer irreparable harm in the absence of
preliminary relief, that the balance of equities tips in [her]
favor, and that an injunction is in the public interest.'"
Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation
omitted).  Irreparable harm and the likelihood of success weigh
most heavily in the analysis.  Winter v. Nat. Res. Def. Council,
Inc., 555 U.S. 7, 22 (2008); Voice of the Arab World, Inc. v.
MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  The
burden of proof is on the movant.  See Esso Std. Oil Co. v.
Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

As to the preliminary injunction motion seeking to compel
HUD's response to the HUD complaint, Kris has alleged that in
July 2018 she received a response from HUD, directing her to
submit additional documents in support of her claims.  To that
extent, Kris's request for an order directing HUD to respond is
moot.  Furthermore, in general, Kris is not barred from pursuing

23

this action against the remaining defendants, while HUD's
investigation remains pending.  See 42 U.S.C. § 3613(a)(2).
Accordingly, Kris has failed to demonstrate either a likelihood
of success on the merits or any irreparable harm in the absence
of a preliminary injunction.

Kris also requests an injunction: ordering the state courts
and HUD to enforce federal laws, staying the eviction
proceedings, directing HUD either to represent her in the
eviction case or to take enforcement action against the
landlord, and directing the landlord to return her security
deposit.  The claims against HUD underlying her requests for
representation and enforcement do not state claims within this
court's jurisdiction under 28 U.S.C. § 1361, and her claims
challenging the validity of the state eviction proceedings are
barred by the Rooker-Feldman doctrine.  Furthermore, as the
state proceeding has ended, a writ of possession has issued, and
she has been evicted, Kris's request for an order enjoining the
eviction is moot, and should be denied on that basis, as well.

Finally, Kris's lease allowed the landlord to retain her
security deposit under certain circumstances, and the record
before this court does not demonstrate at this time that the
retention of that deposit was not otherwise authorized.  Thus,
Kris has not demonstrated a likelihood of success on the merits
of that claim at this time.  And to the extent the retention of

the security deposit violated Kris's rights under the FHA, an award of damages would be available.  Charlesbank Equity Fund II, L.P. v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) ("Irreparable harm most often exists where a party has no adequate remedy at law.").  Accordingly, Kris's motions (Doc. Nos. 2, 4) seeking such relief at this stage of the case should be denied.

### Conclusion

For the foregoing reasons:

(1) the district judge should dismiss Claims 1(a), 1(b), 2(a), 2(b), 2(c), 3, 4, and 5, as numbered in this Report and Recommendation;

(2) the district judge should drop Attorney Sean Curran and HUD as defendants from this action; and

(3) the district judge should deny Kris's two motions for preliminary injunctive relief (Doc. Nos. 2, 4).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2); LR 7.2(d).  The fourteen day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_Andrea K. Johnstone_
Andrea K. Johnstone
United States Magistrate Judge

August 6, 2018

cc:  Margaret Kris, pro se