# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Margaret Kris

    v.                                    Civil No. 18-cv-566-LM

Dusseault Family Revocable Trust et al.[1]

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court are:

- Plaintiff Margaret Kris's Response (Doc. No. 8) to the August 6, 2018 Report and Recommendation (Doc. No. 6) ("August 6 R&R");

- Kris's "Motion to Enforce HUD Laws" (Doc. No. 11);

- Exhibits attached to Kris's "Motion for Court to Accept into Evidence Latest Correspondence" (Doc. No. 21); and

- Kris's "Notice to Make Court Aware" (Doc. No. 22).

The district judge referred Document No. 8 to the undersigned magistrate judge to determine if reconsideration of the August 6 R&R is necessary. See Oct. 4, 2018 Order. The filings construed as complaint addenda (Doc. Nos. 11, 21, 22) are before this court for preliminary review, pursuant to LR 4.3(d)(2).

---

[1]Plaintiff initially named the Dusseault Family Revocable Trust and Attorney Sean Emmet Curran as defendants. This court's Aug. 6, 2018 Order (Doc. No. 7) added Charlene Dusseault and Frances Dusseault as defendants.

## Background

Kris was a tenant in an apartment in Manchester, New Hampshire, owned by Frances Dusseault and the Dusseault Family Revocable Trust ("Trust") from September 2017 until Kris's eviction in July 2018.  The Manchester Housing and Redevelopment Authority ("MHRA") subsidized Kris's rent under the U.S. Department of Housing and Urban Development ("HUD") Section 8 program.  During the relevant time period, Kris's sole source of income was Social Security Disability Insurance ("SSDI"), a fact known to the Dusseaults.  Kris, who has disabilities including a hearing impairment, complained about the apartment to the MHRA, requested an accommodation of her hearing disability, and withheld rent for several months.

## I.  Eviction Proceeding

Attorney Sean Curran, representing Kris's landlord, filed an action in state court to evict Kris after she had withheld rent.  See Dusseault Family Rev. Tr. of 2017 v. Kris, No. 456-2018-LT-00234 (9th Cir.-Dist. Div.-Manchester, filed Mar. 2, 2018) ("Eviction Proceeding").  The complaint in that action, an exhibit to the Complaint here, requested only repossession and eviction and did not assert a separate claim for damages or rent.  See Landlord & Tenant Writ, id. (Doc. No. 1-2, at 26).  After a hearing on the merits, the state court entered judgment

for the landlord on March 23, 2018.  See Mar. 23, 2018 J., id.
The New Hampshire Supreme Court ("NHSC") declined Kris's
discretionary appeal, see Dusseault Family Rev. Tr. of 2017 v.
Kris, No. 2018-0215 (N.H. June 15, 2018), and the landlord
obtained a writ of possession.  See July 2, 2018 Writ of
Possession, Eviction Proceeding.

II.   Administrative Complaints and Requests for Accommodations

After Kris moved into the apartment in September 2017, she
asserts she found out that there were bed bugs in the building.
She complained and sent a "reasonable accommodation" request
form to the MHRA on October 5, 2017 asserting concerns about the
effect of chemicals on her breathing problems and on her therapy
cat, see Doc. No. 1-1, at 38.  She also sent a letter, dated
January 4, 2018, to the MHRA regarding snow removal issues and
the impact of her hearing impairment on her ability to hear the
snowplow's horn when it arrived, see Doc. No. 1-1, at 45.  Kris
also mailed a Fair Housing Act ("FHA") complaint to HUD on March
30, 2018, see Doc. No. 1-1, at 17.

Kris's HUD complaint asserted claims of discrimination and
retaliation, arising from circumstances she described on the
administrative complaint form as:  "Eviction due to rent
withholding for repairs [sic] misrepresented about bug
infestation [sic] caused me to lose electrical assistance," and

3

"Wasn't given insect disclosure per NH law before renting [sic]
Joanne lied and said her mom got my electrical assistance not
true [sic] her mom had unwanted physical contact with me [sic]
had to call police verbal assault [sic] negligent landlord
doesn't return calls or texts to maintain the property."  HUD
Complt. (Doc. No. 1-1, at 17).  HUD responded to Kris in July
2018 after she had been evicted, stating that HUD would make
further inquiries.  See July 18, 2018 Ltr. to Kris from Robert
D. Forti, HUD Intake Branch Chief (Doc. No. 11, at 5).  HUD then
dismissed the matter in August 2018 concluding that Kris's
"situation [was] not covered under the Fair Housing Act."  See
Aug. 27, 2018 Ltr. to Kris from HUD Intake Branch Chief (Doc.
No. 11, at 6).  Kris received notice of that decision in October
2018, when she attended a hearing at the MHRA that resulted in
the termination of her Section 8 housing voucher.  See Pl.'s
Mot. to Enforce HUD Laws (Doc. No. 11, at 1-2).  HUD denied
Kris's request for reconsideration and reaffirmed its decision
to dismiss her complaint.  See Feb. 21, 2019 Ltr. to Kris from
Gordon F. Patterson, HUD Enf't Support Div. Acting Dir. (Doc.
No. 21, at 4-5).


III. Criminal Charges

     After Kris's July 2, 2018 eviction, Kris re-entered the
apartment and was arrested on July 11, 2018 on charges including

4

criminal trespass.  She was convicted pursuant to her nolo contendere plea to that charge and was sentenced on August 14, 2018.  See State v. Kris, No. 456-2018-cr-02739 (N.H. Cir. Ct., 9th Cir.-Dist. Div.-Manchester).

IV.  Federal Litigation

Kris filed this action on June 20, 2018 along with motions seeking preliminary injunctive relief, after the NHSC declined to accept her appeal in the eviction proceeding.  See Doc. Nos. 1, 2, 4.  Construed liberally, Kris's federal complaint asserts that HUD and the state court failed to enforce laws prohibiting retaliatory evictions and disability discrimination, and that judges in the state proceedings were biased.  Kris asked this court to enjoin the eviction, to compel HUD to respond to her administrative complaint, and to enforce the FHA in her case. After her eviction, Kris added claims seeking the return of her security deposit and claims regarding incidents that occurred when she was arrested by the Manchester Police Department on July 11, 2018 and held overnight at the Hillsborough County Department of Corrections ("HCDC").

The August 6 R&R examined Kris's initial pleadings (Doc. Nos. 1, 2, 4, 5), identified her claims, recommended dismissal of many of Kris's claims, and recommended that Kris's request for preliminary injunctive relief be denied.  The August 6, 2018

Order (Doc. No. 7) directed service upon Charlene and Frances
Dusseault and the Trust (hereinafter "Dusseault defendants") as
to the following FHA claims, identified in the August 6 R&R as
Claims 2(d)(i)-(iv):

> 2.    Frances Dusseault, the Dusseault Family Revocable
> Trust, and Charlene Dusseault violated Kris's rights under
> the FHA, in that:
>
> . . . .
>
> > d.    After receiving notice that Kris had contacted
> > the MHRA to complain about the apartment and to
> > request assistance relating to Kris's disabilities, in
> > retaliation for Kris's actions in contacting the MHRA:
> >
> > > i.    Charlene and Frances Dusseault appeared at
> > > Kris's apartment, "verbally assaulted" Kris, and
> > > Frances pushed Kris's arm away forcefully;
> > >
> > > ii.    The landlord stopped responding to Kris's
> > > complaints about maintenance issues;
> > >
> > > iii. The landlord evicted Kris; and
> > >
> > > iv.    The landlord withheld Kris's security
> > > deposit.

See Aug. 6, 2018 R&R, at 7-8.

The district judge approved the August 6 R&R, in part, to
the extent the court denied the motions for a temporary
restraining order and preliminary injunction.  See Oct. 4, 2018
Order (approving in part August 6 R&R and referring Doc. No. 8
to magistrate judge for further review).  The district judge
directed the magistrate judge to consider whether the new
allegations in Kris's objection (Doc. No. 8) to the August 6 R&R

affected the identification and recommended disposition of the claims in the August 6 R&R.

The Dusseault defendants responded to the complaint by filing a motion to dismiss (Doc. No. 15) which remains pending. Plaintiff has since filed:  an objection to the motion to dismiss (Doc. No. 19); a motion asking the court to appoint counsel to represent her in this matter (Doc. No. 10); and motions seeking to stay further proceedings (Doc. Nos. 16, 17) pending a ruling on her motion for court-appointed counsel.  An Order issued along with this Report and Recommendation resolves Kris's motions.

Discussion

I.    Summary of Document No. 8

In Document No. 8, Kris clarifies the nature of her claims and factual assertions and takes issue with the proposed findings and conclusions of law in the August 6 R&R.  Kris clarifies that she is suing HUD because that agency did not finish its investigation of her administrative complaint within thirty days.  As to her claims against the Dusseault defendants, Kris clarifies that she considers the eviction to have been "retaliatory," and to have occurred without proper notice.  She clarifies that the Dusseaults were aware she was disabled when she signed the lease because they knew her income came from

7

SSDI.  She further clarifies that the landlord knew that she had
a cat she used for therapy or support, since the lease allowed
her to keep a cat.

## II.  Impact of Document No. 8 on August 6 R&R

### A.  HUD Claims

The August 6 R&R construed plaintiff's initial pleadings as
asserting that HUD had not performed its duty of completing an
investigation of her discrimination complaint within the time
allowed under the FHA.  In her initial filings, Kris sought an
order compelling HUD to complete that investigation, represent
her, and take enforcement action against the Dusseaults.  The
August 6 R&R recommended that those claims be dismissed for
failure to state a claim upon which relief can be granted.

Kris's subsequent filings (Doc. Nos. 8, 11, 21, 22)
demonstrate that HUD dismissed her administrative complaint in
August 2018.  HUD then denied her request for reconsideration in
February 2019.  Consistent with the August 6 R&R, all of Kris's
mandamus claims against HUD should be dismissed, as there is no
mandatory duty that HUD has failed to perform with regard to
Kris's complaint, and HUD should be dropped from this action as
a defendant.

B.   <u>ADA Claims</u>

The August 6 R&R identified and then recommended dismissal of Kris's ADA claims, as a matter of law.  The recent filings do not affect the identification and analysis of those claims or the reasons presented in the August 6 R&R for their dismissal. Consistent with that R&R, Kris's ADA claims should be dismissed.

C.   <u>Fair Housing Act Claims</u>

The August 6 R&R identified three types of FHA claims asserted against defendants by Kris: (1) FHA retaliation claims, asserted against Attorney Curran and the Dusseault defendants; (2) disability discrimination claims, asserted against the Dusseault defendants; and (3) failure-to-accommodate claims, asserted against the Dusseault defendants.  In Document No. 8, Kris clarifies that she also intended to assert claims alleging a failure to provide her with a reasonable accommodation of her disabilities and claims of FHA retaliation.

1.   <u>Retaliation Claims against Attorney Curran</u>

The August 6 R&R construed Kris's initial pleadings liberally as intending to assert FHA retaliation claims against Attorney Curran for filing an eviction proceeding against her.

> The FHA's anti-retaliation provision makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his

> having exercised or enjoyed, . . . any right granted or
> protected by section 3603, 3604, 3605, or 3606 of this
> title." 42 U.S.C. § 3617.

Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 868,

(7th Cir. 2018).

> To prevail on a claim of retaliation under the FHA,
> plaintiffs must establish: (1) that they engaged in
> protected activity by opposing conduct prohibited under the
> FHA; (2) that defendants were aware of that activity; (3)
> that defendants subsequently took adverse action against
> plaintiffs; and (4) that a causal connection exists between
> the protected activity and the adverse action, i.e., that a
> retaliatory motive played a part in the adverse action.

Lynn v. Vill. of Pomona, 373 F. Supp. 2d 418, 432 (S.D.N.Y.

2005), aff'd, 212 F. App'x 38 (2d Cir. 2007).

The August 6 R&R recommended dismissal of Kris's FHA

retaliation claims against Attorney Curran, as Kris had failed

to plead facts to demonstrate that Attorney Curran was aware

that Kris had engaged in any activity protected by the FHA,

prior to March 2, 2018 when Attorney Curran filed the state

eviction proceeding on behalf of the landlord.  Kris's objection

to the August 6 R&R expresses her opinion that the eviction was

"retaliatory"; that Attorney Curran, like the Dusseaults, was

"vindictive"; that Attorney Curran was aware of her

disabilities; that he witnessed her eviction and arrest on July

11, 2018; and that he gave her seven days to remove her

belongings while she was subject to bail conditions restricting

her access to the property.  Those new facts, taken as true, do

not demonstrate that Attorney Curran was aware that Kris had
engaged in any FHA protected activity prior to his performance
of any of the acts she considers to be "retaliatory."  Cf. Hall
v. Greystar Mgmt. Servs. L.P., 637 F. App'x 93, 98 (4th Cir.
2016) (without more, fact that landlord, after regaining
possession of leased premises, destroyed tenant's property, did
not state claim of FHA retaliation).  Accordingly, the FHA
retaliation claims asserted against Attorney Curran should be
dismissed.


         2.   Bedbug Notice
              i.   Disability Discrimination

     The August 6 R&R identified and then recommended dismissal
of Kris's claims of FHA discrimination based on the timing of
her receipt of notice of a bed bug infestation.  The August 6
R&R concluded that Kris had not pleaded any facts showing that
the Dusseault defendants were aware of her disabilities before
they are alleged to have provided her with a bed bug notice.
Kris's subsequent filings plead facts showing that the
Dusseaults knew she received SSDI and should have known she was
disabled when she signed the lease, and that they also knew she
had a cat she used for support or therapy.

     Even assuming defendants knew she had a disability and a
therapy or support animal when they provided her with notice of

11

a bed bug infestation, nothing pleaded by Kris gives rise to a
plausible claim that an intent to discriminate against Kris
because of her disability was a factor affecting the timing of
the notice she received.  Kris has not alleged facts warranting
further reconsideration of that aspect of the August 6 R&R, and
the discrimination claim relating to the timing of the bed bug
notice should be dismissed.


                ii.  Reasonable Accommodation as to Bed Bugs

        The August 6 R&R identified, and then recommended dismissal
of, Kris's FHA claims alleging a failure to reasonably
accommodate her disabilities, with respect to the bed-bug
notice.

> To establish a prima facie case of failure to accommodate
> under the [FHA], a claimant must show that he is
> handicapped within the purview of 42 U.S.C. § 3602(h) and
> that the party charged knew or should reasonably have known
> of his handicap. . . . Next the claimant must show that he
> requested a particular accommodation that is both
> reasonable and necessary to allow him an equal opportunity
> to use and enjoy the housing in question. . . . Finally,
> the claimant must show that the party charged refused to
> make the requested accommodation.

Astralis Condo. Ass'n v. Sec'y, HUD, 620 F.3d 62, 67 (1st Cir.

2010) (citations omitted).

> "[T]he duty to make a reasonable accommodation does not
> simply spring from that the fact that a handicapped person
> wants such an accommodation made."  Rather, a housing
> provider must have had a prior "opportunity to
> accommodate."  To have that opportunity, "[t]he defendants

must have had an idea of what accommodation [the plaintiff] sought prior to their incurring liability for" refusing it.

Elliott v. QF Circa 37, LLC, No. 16-cv-0288-BAS-AGS, 2018 U.S. Dist. LEXIS 98668, at *19-*21, 2018 WL 2933467, at *7 (S.D. Cal. June 12, 2018) (citations omitted).

The court construed Kris's intent to state a reasonable accommodation claim concerning the bed bug notice from facts indicating that Kris had submitted a "reasonable accommodation" form to the MHRA on October 7, 2017.  On that form, Kris had written, "I have a concern the building requires extermination. I have a breathing issue COPD as well a [sic] support animal that cannot breathe these chemicals [sic] a regular basis." Doc. No. 1-1, at 38.  Kris has not pleaded any facts indicating whether she received any response from the MHRA or the landlord to that form, or whether in fact any extermination ensued, which exposed her to chemicals on a regular basis.  The August 6 R&R recommended dismissal of her reasonable accommodation claim relating to bed bug extermination as Kris had not pleaded facts showing that defendants had refused to implement any particular accommodation that Kris had requested.

None of the new allegations in Kris's subsequent filings demonstrate that the landlord refused to implement any particular accommodation requested by Kris.  Accordingly, Kris's FHA reasonable accommodation claim relating to bed bugs should

be dismissed.

### iii. <u>Retaliation Claim as to Late Notice</u>

The August 6 R&R also identified and recommended dismissal of Kris's FHA retaliation claims asserting that defendants notified her of bed bugs after she had moved in, in retaliation for her complaints to the MHRA.  The August 6 R&R concluded that the sequence of events did not give rise to any inference of an intent to retaliate for Kris's complaints that could be deemed to have been protected by the FHA, given that Kris received notice of the bed bug infestation <u>before</u> she submitted the October 2017 "reasonable accommodation" form to the MHRA, and before she had engaged in any other protected conduct.

"[C]omplaints" and "less formal means of protest such as letter writing" constitute "'protected activity' under the FHA <u>if</u> . . . lodged in protest of statutorily prohibited discrimination."  <u>Kendrick v. Greenburgh Hous. Auth.</u>, No. 07-CV-5859 (CS), 2011 U.S. Dist. LEXIS 29866, at *29, 2011 WL 1118664, at *9 (S.D.N.Y. Mar. 22, 2011) (citations omitted) (emphasis in original).  In other words, complaints to the MHRA or the landlord that do not relate to the type of discrimination prohibited by the FHA do not form the basis of viable claims of FHA retaliation.  <u>See</u> <u>id.</u>

In her recent filings, Kris asserts that the bug traps that

14

would have alerted her to the presence of bed bugs were not present when she viewed the apartment before signing the lease, and that after she saw the traps, she complained to the landlord who then provided her with a bed bug notice.  Whether or not the notice Kris received complied with the requirements of state law is not material to whether she has stated a claim of FHA retaliation upon which relief can be granted.  None of Kris's new allegations plead the existence of a causal connection between the late bed bug notice and any prior complaints about disability discrimination, requests for reasonable accommodations, or other contacts with the MHRA or others that could be deemed to be protected conduct.  In the absence of any suggestion of a causal connection, Kris has failed to state an FHA retaliation claim upon which relief can be granted.

### 3.   Snowplowing Issues

The August 6 R&R identified, then recommended dismissal of, Kris's claim that the landlord had failed to make a reasonable accommodation of her hearing disability in relation to snowplow operations.  Kris had pleaded that the building owner provided all tenants with written notice in December 2017 that tenants needed to move their cars after snowstorms dropping more than three inches of snow so snow could be removed.  See Doc. No. 1-1, at 44.  Kris further pleaded that the snowplow driver

provided tenants with additional notice by honking the horn upon his arrival.  Kris complained to the MHRA, in a letter dated January 4, 2018, that the honking horn did not give her adequate notice of her need to move her car, as she is deaf in one ear. See Doc. No. 1-1, at 45.  The August 6 R&R recommended dismissal of Kris's reasonable accommodation claim relating to snow removal operations, as Kris had not pleaded facts to state a claim that she had requested any particular accommodation, such as a different type of notice, that the landlord refused to implement.  Kris has not pleaded any new facts altering that conclusion.

An additional basis for dismissing the snowplow notice reasonable accommodation claim is evident in the pleadings, arising from Kris's failure to demonstrate that an accommodation of her hearing disability was "necessary," Astralis Condo. Ass'n, 620 F.3d at 67.  All tenants received a notice that plowing would occur when snowstorms dropped more than three inches; Kris has not demonstrated that such notice failed to accommodate her hearing disability.  Furthermore, Kris has filed exhibits stating that in January 2018, she gave her cellphone number to the snowplow operator, so that he could call her upon the plow's arrival.  See Doc. No. 1-2, at 16.  Kris has failed to plead facts to show that further accommodation of her hearing disability by any defendant was "necessary" to allow her equal

enjoyment and use of snow removal services under her lease, Astralis Condo. Ass'n, 620 F.3d at 67.  Further reconsideration of the August 6 R&R in that regard is not warranted, and the reasonable accommodation claim relating to snow removal should be dismissed.


### 4.   Electrical Assistance Payments

The August 6 R&R identified, then recommended dismissal of Kris's FHA claims of disability discrimination with respect to misrepresentations made by Joanne Dusseault before Kris signed the lease.  Specifically, before Kris signed the lease, Kris alleges that Joanne Dusseault falsely indicated that Frances Dusseault would take care of Kris's electric utility assistance payments, thus intentionally misleading Kris and causing Kris to believe she did not have to deal with her electric utility assistance account, in retaliation for Kris's contacts with the MHRA.  The August 6 R&R concluded that Kris had failed to plead facts showing a causal connection between any FHA protected conduct and the alleged misrepresentations made to Kris before she signed the lease.

Further, the August 6 R&R concluded that Kris had failed to plead facts showing a causal connection between any FHA protected conduct and the alleged conduct of a third party in terminating Kris's participation in the electric assistance

program in April 2018, due to a lack of activity relating to the account associated with the address where Kris lived before she moved to the Dusseault defendants' building.  Kris's subsequent filings do not alter those conclusions.  Accordingly, those FHA claims should be dismissed for failure to state a claim upon which relief can be granted.

### 5.   Assault, Repairs, Eviction, Security Deposit

The August 6 R&R identified Claims 2(d)(i)-(iv), asserting that the defendants retaliated against Kris for contacting the MHRA about her disabilities: (1) in that Charlene and Frances Dusseault are alleged to have verbally and/or physically assaulted Kris in January 2018, (2) the Dusseault defendants are alleged to have failed to respond to Kris's requests for maintenance, (3) the Trust undertook an eviction action against Kris in state court in retaliation for Kris's complaints to the MHRA, and (4) the Trust retained Kris's security deposit after her July 2018 eviction in retaliation for Kris's complaints about disability discrimination.  Kris's subsequent filings do not affect the August 6 R&R's finding that those claims (Claims 2(d)(i), 2(d)(ii), 2(d)(iii), 2(d)(iv)) are sufficiently stated to survive preliminary review.

D.   <u>State Court Proceedings (Claim 3 in August 6 R&R)</u>

The August 6 R&R identified and then recommended dismissal of all of Kris's claims asserting that judges in the state court proceedings were biased against her, denied her due process, and failed to enforce state laws, HUD regulations, and federal laws regarding accommodations for individuals with disabilities. That R&R concluded that the <u>Rooker-Feldman</u> doctrine applied to those claims challenging the outcome of the state proceedings. The recent filings do not affect the <u>Rooker-Feldman</u> analysis and recommendation as to those claims.  Accordingly, consistent with the August 6 R&R's recommendation, the claims challenging the state court proceedings (Claim 3) should be dismissed.

E.   <u>Arrest and Detention (Claims 4 and 5 in August 6 R&R)</u>

The August 6 R&R identified claims asserted by Kris challenging the conduct of the Manchester Police Department officers who arrested her on July 11, 2018, and the HCDC officers who, she alleges, used excessive force against her in violation of her federal rights.  The August 6 R&R recommended that those claims be dismissed from this case without prejudice to Kris's ability to refile them in a new federal or state court action.  Nothing in Kris's subsequent filings affects the August 6 R&R's conclusion that those claims and defendants are not properly joined with Kris's FHA claims in this case.

Accordingly, Kris's claims against the City and County officers
and agencies (Claims 4 and 5) should be dismissed from this
case, without prejudice to Kris's ability to file new complaints
naming those officers and/or agencies as defendants.


III. Motion to Enforce HUD Laws (Doc. No. 11)

    Kris has filed a document she entitled, "Motion to Enforce
HUD Laws" (Doc. No. 11), in which she refers generally to laws
or HUD regulations Kris believes were violated in connection
with her tenancy, eviction, and contacts with the MHRA and HUD.
Kris's "Motion to Enforce HUD Laws," liberally construed, is a
complaint addendum, in which Kris asserts claims: alleging that
there were procedural errors in the state court eviction
proceedings and in HUD's processing of her FHA complaint;
asserting, in a conclusory manner, that agencies including the
Manchester Police Department, the New Hampshire Department of
Justice, and the HCDC have failed to properly investigate her
claims; and that the MHRA in October 2018 gave her circumstances
"no consideration" when it terminated her Section 8 housing
voucher, after a hearing.  Doc. No. 11, at 1.  To the extent
Kris seeks to assert new claims against the state and local
agencies she names relating to the investigation of her
complaints, and as to the MHRA relating to the termination of
her Section 8 housing voucher, such claims should be dismissed

20

without prejudice as insufficiently stated, and because they are
not properly joined with the FHA retaliation claims remaining in
this case, asserted against the Dusseault defendants.

## Conclusion

For the foregoing reasons, the magistrate judge recommends
that the district judge:

1.   Approve this Supplemental Report and
Recommendation:

2.   Approve the August 6 R&R (Doc. No. 6);

3.   Dismiss Claims 1(a), 1(b), 2(a), 2(b), 2(c), 3,
4, and 5, as numbered in the August 6 R&R;

4.   Drop Attorney Sean Curran and HUD as defendants;

5.   Redocket the "Motion to Enforce HUD Laws" (Doc.
No. 11) as a complaint addendum; and

6.   Dismiss, without prejudice, the claims Kris
asserts against the New Hampshire Department of Justice,
Manchester Police Department, and HCDC for their conduct in
investigating or responding to her complaints, and against
the MHRA, arising from the termination of her Section 8
voucher.

Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2); LR 7.2(d).  The fourteen-day period may be

extended upon motion.  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168
(1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

July 12, 2019


cc:  Margaret Kris, pro se
     Brian C. Shaughnessy, Esq.