UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Margaret Kris

    v.                                              Civil No. 18-cv-566-LM
                                                       Opinion No. 2019 DNH 164

Dusseault Family Revocable
Trust of 2017 et al.

**O R D E R**

Plaintiff Margaret Kris, proceeding pro se, sues defendants, Dusseault Family Revocable Trust of 2017, Frances Dusseault, and Charlene Dusseault, for claims arising out of an eviction proceeding Kris contends defendants undertook in retaliation for her complaints to the local public housing authority.  After the magistrate judge's preliminary review of Kris's suit, the court dismissed all but one of her claims.  Defendants move to dismiss Kris's remaining claim.  Doc. no. 15.  Kris objects.  Doc. no. 19.  For the following reasons, the court denies defendants' motion to dismiss.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, draw all reasonable inferences from those facts in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's

complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

Kris lives with several physical and mental health conditions.  She is hearing impaired in one ear, has a breathing problem (COPD), and suffers from post-traumatic stress disorder and anxiety.  To assist her, she previously had a "support" cat.  During all relevant times, Kris's sole source of income was Social Security Disability Insurance ("SSDI").

Kris was a tenant in an apartment in Manchester, owned by the Dusseault Family Revocable Trust of 2017 ("Dusseault Trust"), from September 2017 until her eviction in July 2018.  Though the Dusseault Trust owns the apartment complex, Frances Dusseault acted as the landlord of the property.  The Manchester Housing and Redevelopment Authority ("MHRA") subsidized Kris's rent under the U.S. Department of Housing and Urban Development ("HUD") Section 8 program.

While Kris resided at the Manchester apartment, she made multiple complaints about her landlord to the MHRA. On October 5, 2017, Kris reported to the MHRA that she believed her building needed bedbug extermination and that she was concerned that such extermination would aggravate her breathing issues and negatively impact her support animal. Doc. no. 1-1 at 38. On December 11, 2017, she wrote a letter to the MHRA about maintenance issues at her apartment, inadequate snow removal, and the behavior of other tenants. Id. at 39. On January 4, 2018, Kris wrote another letter to the MHRA complaining that, due to her hearing impairment, the landlord had given her inadequate notice of the need to move her car for snow removal by having the snowplow honk. Id. at 45.

At some point in January 2018, Frances and Charlene Dusseault came to Kris's apartment to "admonish" her for reporting them to the MHRA. Doc. no. 1-2 at 35. The Dusseaults "verbally assault[ed]" Kris, and Frances dug her fingernails into Kris's arm and then pushed Kris's arm away. Id. Kris asked the Dusseaults to leave her apartment and reported the incident to the Manchester Police Department. Id. at 33. After this incident, the landlord did not respond to any of Kris's complaints about maintenance issues at the apartment. Doc. no. 1-1 at 31, 40.

In February 2018, Kris began withholding rent due to the landlord's failure to respond to her requests for repairs.  Soon thereafter, on March 2, the Dusseault Trust's attorney, Sean Curran, filed a state court proceeding to evict Kris.  See Dusseault Family Rev. Tr. Of 2017 v. Kris, No. 456-2018-LT-00234 (9th Cir. Dist. Div., Manchester).  After a hearing in the eviction proceeding on March 28, the Manchester District Court entered judgment for the Dusseault Trust.

Kris then filed a Fair Housing Act Discrimination Complaint with HUD.  Doc. no. 1-1 at 17.  In the complaint, Kris checked boxes to indicate that she believed she had been discriminated against on the basis of her mental and physical handicaps, and specifically mentioned her hearing impairment.  She claimed that she was evicted because she withheld rent for repairs, that her landlord verbally and physically assaulted her, and that the landlord failed to respond to her requests to maintain the property.

Kris also appealed her eviction judgment to the New Hampshire Supreme Court.  But that Court declined to accept her discretionary appeal.  See Dussealt Family Revocable Trust of 2017 v. Margaret Kris, No. 2018-0215 (N.H. Jun. 13, 2018); doc. no. 1-1 at 10.  Consequently, the Manchester District Court issued a writ of possession to the landlord.

4

Kris filed this action on June 20, 2018 along with her first motion for preliminary injunctive relief. Doc. nos. 1 & 2. On July 11, 2018, Kris returned to the Manchester apartment in an attempt to collect her belongings. After entering the property despite the posting of a sheriff's sticker, Kris was arrested for criminal trespass, resisting arrest, and disturbing the peace. She spent the night at the Hillsborough County Department of Corrections, where she claims she was physically assaulted by corrections officers and denied medical care. On July 13, 2018, Kris filed a motion for a temporary restraining order requesting relief for how she was treated while in jail. Doc. no. 4. She also claimed that she has not received her security deposit back from her landlord nor has it been applied towards her outstanding rent. Id. at 8-9.

This court referred Kris's complaint and two requests for preliminary relief to the magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge issued a report and recommendation on August 6, 2018 ("August 2018 R&R"). The August 2018 R&R characterized Kris's pleadings as asserting five claims: (1) HUD failed to execute certain duties under the Fair Housing Act ("FHA"); (2) the Dusseaults and Attorney Sean Curran violated Kris's rights under the FHA and the Americans with Disabilities Act; (3) biased state court judges violated Kris's due process rights

during the eviction proceedings; (4) the Manchester Police Department subjected Kris to excessive force and denied her medical attention in violation of her federal constitutional rights; and (5) the Manchester Police Department subjected Kris to excessive force and denied her access to grievances and a Bible in violation of her federal constitutional rights. See doc. no. 6 at 7-8. Claims 1 and 2 have additional subparts based on specific factual allegations. Id. After conducting a preliminary review of Kris's claims, the magistrate judge recommended that this court dismiss claims 1, 3, 4, and 5 in their entirety, and all but one subpart of claim 2. Id. at 25. The magistrate judge also recommended that this court deny Kris's two motions for preliminary injunctive relief and dismiss Attorney Sean Curran and HUD as defendants. Id.

On September 11, 2018, Kris filed a response to the August 2018 R&R. Doc. no. 8. This court then issued an order approving the August 2018 R&R in part. The court approved the August 2018 R&R insofar as it recommended denying without prejudice Kris's motion for a temporary restraining order (doc. no. 4) and motion for preliminary injunction (doc. no. 2). The court then referred Kris's response to the August 2018 R&R (doc. no. 8) to the magistrate judge to consider whether any of the allegations in Kris's response affected the magistrate judge's recommended disposition of Kris's claims.

On July 12, 2019, the magistrate judge issued a supplemental report and recommendation ("July 2019 R&R"). The July 2019 R&R thoroughly reassessed Kris's claims in light of the information Kris provided the court following the August 2018 R&R. Nevertheless, the July 2019 R&R reached the same conclusion as the August 2018 R&R regarding disposition of Kris's claims: it recommended that claims 1, 3, 4 and 5 be dismissed in their entirety, and that all but one subpart of claim 2 be dismissed. Doc. no. 23 at 21. The July 2019 R&R also recommended that the court dismiss Sean Curran and HUD as defendants. On September 6, 2019, this court approved the July 2019 R&R. Doc. no. 31. Now before the court is defendants' motion to dismiss Kris's only surviving claim: retaliation under the FHA.

**DISCUSSION**

Kris alleges that, after learning that she had complained to the MHRA and HUD, defendants retaliated against her for that conduct. Specifically, she contends that the retaliation included: (1) Charlene and Frances Dusseault's verbal assault of Kris at her apartment and Frances's physical assault of Kris; (2) the landlord's failure to respond to Kris's complaints about maintenance and other issues at the apartment complex; (3) the

7

landlord's eviction of Kris; and (4) the landlord's failure to return Kris's security deposit.

Kris's claim of retaliation under the FHA arises under 42 U.S.C § 3617, which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of" the FHA.  42 U.S.C. § 3617.  This statute "safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights."  Frazier v. Rominger, 27 F.3d 828, 833 (2d Cir. 1994).

Consistent with other district courts in the First Circuit, this court previously applied a four-factor test for establishing an FHA retaliation claim that requires proof of intentional discrimination based on a plaintiff's membership in a protected class.  See Lath v. Oak Brook Condo. Owner's Ass'n, Civ. No. 16-cv-463-LM, 2017 WL 1051001, at *6-7 (D.N.H. Mar. 20, 2017) (stating that, to prove FHA retaliation claim, plaintiff must show that: (1) she is a member of an FHA-protected class; (2) she exercised a right protected by §§ 3603-06 of the FHA; (3) the defendant's conduct was at least partially motivated by intentional discrimination; and (4) the defendant's conduct constituted coercion, intimidation, threatening, or interference

with plaintiff on account of plaintiff's exercise of a right protected by the FHA); see also Barrow v. Barrow, Civ. No. 16-11493-FDS, 2016 WL 6996996, at *6 (D. Mass. Nov. 29, 2016) (applying same test); S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 95 (D. Mass. 2010) (same). Defendants rely upon the test used in Lath. They argue that Kris's claim cannot survive a motion to dismiss because she has not alleged any facts showing that defendants' retaliatory conduct was motivated in part by discrimination on the basis of her handicap. See doc. no. 15 at 9-10.

While defendants' reliance on Lath is understandable, as it appears to require a plaintiff alleging FHA retaliation to show discriminatory animus, a close reading of Lath reveals the limits of its holding on that issue. In Lath, the court signaled to the plaintiff that it may require him to plead facts sufficient to show that the retaliatory conduct was "at least partially motivated by intentional discrimination" and ordered him to "show cause" why he should not be so required. Lath, 2017 WL 1051001, at *7. In response, plaintiff's filing did not address this issue and the court dismissed plaintiff's retaliation claims as a result. See Lath v. Oak Brook Condo. Owner's Ass'n, Civ. No. 16-cv-463-LM, 2017 WL 1294449, at *1 (D.N.H. Apr. 3, 2017).

9

But to be crystal clear: to the extent Lath can be read as holding that a plaintiff alleging an FHA retaliation claim must prove discriminatory animus, that holding is incorrect. A majority of courts apply a standard to FHA retaliation claims that does not require proof of intentional discrimination based on the plaintiff's membership in an FHA-protected class. See Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 868 (7th Cir. 2018); Hall v. Greystar Mgmt. Servs., L.P., 637 F. App'x 93, 98 (4th Cir. 2016); Newell v. Heritage Senior Living, LLC, 673 F. App'x 227, 231 (3d Cir. 2016); Philippeaux v. Apartment Inv. & Mgmt. Co., 598 F. App'x 640, 644 (11th Cir. 2015); Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002), superseded by statute on other grounds as recognized in Jackson v. New York City Dep't of Educ., 768 F. App'x 16, 17 (2d Cir. 2019); Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001). These courts require proof that: (1) plaintiff engaged in protected activity; (2) plaintiff suffered an adverse action; and (3) there was a causal link between the two. See, e.g., Wetzel, 901 F.3d at 868; see also Hall, 637 F. App'x at 98 (requiring proof of additional element that defendant was aware of plaintiff's protected activity); Regional Economic Cmty. Action Program, 294 F.3d at 54 (same).

As the Seventh Circuit explained:

> [I]f [the court] were to read the FHA's anti-retaliation provision to require that a plaintiff allege discriminatory animus, it would be an anomaly.

Wetzel, 901 F.3d at 868. This is so, as the Seventh Circuit explained, because courts have not construed other anti-retaliation provisions in similar statutes to require proof of discriminatory animus. See id.

This is indeed true in the First Circuit. To prove retaliation under Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act, a plaintiff must show that: (1) she engaged in protected conduct, (2) defendant subjected her to adverse action, and (3) a causal connection existed between the two. Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018) (Title VII and ADEA); D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 41 (1st Cir. 2012) (ADA and Rehabilitation Act). Proof of membership in a protected class and proof of intentional discrimination are not required under these anti-retaliation provisions because their purpose is to provide protection "not because of who people are, but because of what they do." Wetzel, 901 F.3d at 868; see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006) (contrasting anti-discrimination provision of Title VII, which "seeks to prevent injury to individuals based on who they

11

are, i.e., their status" with its anti-retaliation provision, which "seeks to prevent harm to individuals based on what they do, i.e., their conduct").

This court agrees with the Seventh Circuit that the FHA's anti-retaliation provision should be construed in the same manner as anti-retaliation provisions in other anti-discrimination statues.  See Wetzel, 901 F.3d at 868; see also Hall, 637 F. App'x at 98 (observing that Title VII and FHA "employ similar language" and "are part of a coordinated scheme of federal civil rights laws enacted to end discrimination" (internal quotation marks omitted)).  This court will therefore require proof of the following elements to establish an FHA retaliation claim: (1) plaintiff engaged in protected activity; (2) defendant subjected plaintiff to an adverse action; and (3) there was a causal connection between the protected conduct and the adverse action.  See Rivera-Rivera, 898 F.3d at 94; Esposito, 675 F.3d at 41.  The court now turns to applying this test to the facts of this case.

I.   Protected Activity

First, Kris must allege that she engaged in "protected activity" under the FHA.  To show that she engaged in protected activity, a plaintiff must allege that she took action "to protest or oppose statutorily prohibited discrimination."

Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (internal quotation marks omitted); see also Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (stating same definition of "protected activity" under retaliation provision of Title VII). A plaintiff does not have to establish that the conditions or actions she protested or opposed actually constituted discrimination under the FHA, but only that she had a "good faith, reasonable belief" that the defendant's acts or practices violated the FHA. See Broome v. Biondi, 17 F. Supp. 2d 211, 219 (S.D.N.Y. 1997); Fantini, 557 F.3d at 32 (applying this standard to Title VII retaliation claim).

Under the FHA, "protected activity" includes a plaintiff's request for a reasonable accommodation. See Wilson v. Wilder Balter Partners, Inc., No. 13-CV-2595 KMK, 2015 WL 685194, at *12 (S.D.N.Y. Feb. 17, 2015); see also 42 U.S.C. § 3604(f)(3)(B) (making it unlawful to refuse to make reasonable accommodations in the rules, policies, practices, or services related to a dwelling in order to afford a handicapped person an equal opportunity for enjoyment). Protected activity also includes the filing of complaints with federal or local housing authorities, or even less formal means of protest, so long as the complaint is related to unlawful discrimination. See Wilson, 2015 WL 685194, at *12; see also 24 C.F.R. §

100.400(c)(6) (interpreting § 3617 as prohibiting retaliation against any person "because that person reported a discriminatory housing practice to a housing provider or other authority"). For example, a HUD complaint alleging religious discrimination against the plaintiff by the property manager and a failure to accommodate plaintiff's disability is "protected activity." See Lloyd v. Presby's Inspired Life, 251 F. Supp. 3d 891, 896, 904 (E.D. Pa. 2017). But complaints to HUD or the local housing authority about general conditions of the apartment or mismanagement of the apartment complex are not. See Riley v. City of Kokomo, 909 F.3d 182, 192 (7th Cir. 2018); Williams v. New York City Hous. Auth., No. 07CIV7587RJS, 2009 WL 804137, at *8 (S.D.N.Y. Mar. 26, 2009), aff'd, 408 F. App'x 389 (2d Cir. 2010).

Here, Kris's alleged protected activity is her numerous complaints to the MHRA and HUD. The court focuses its analysis on Kris's January 4, 2018 letter to the MHRA.[1] That letter complained that, due to Kris's hearing impairment, the landlord was providing her with inadequate notice of the need to move her car for snow removal. Doc. no. 1-1 at 45. She stated that the

---

[1] Kris alleges that she sent multiple other letters to the MHRA. However, many of these letters would not qualify as protected activity under the FHA. See, e.g., doc. no. 1-1 at 39 (December 2017 letter to MHRA complaining about maintenance issues at the apartment and behavior of other tenants); see Riley, 909 F.3d at 192; Williams, 2009 WL 804137, at *8.

14

landlord's "notice" of the need to move her car was to have the snowplow honk its horn, which was insufficient because she is deaf in her left ear. Favorably construed, Kris's letter protests the landlord's discrimination against her in the provision of services related to her apartment on the basis of her handicap. See 42 U.S.C. § 3604(f)(2) (prohibiting discrimination against person in provision of services in connection with dwelling on basis of handicap). Kris's January 4 letter to the MHRA therefore constitutes protected activity under the FHA.

II. Adverse Action

Second, plaintiff must allege that defendants subjected her to an "adverse action." Under the FHA, the "adverse action" must be in the form of "coercion, intimidation, threats, or interference." Walker, 272 F.3d at 1128 (internal quotation marks and brackets omitted). To "coerce" means to "compel to an act or choice by force, threat, or other pressure." Id. at 1129 (internal quotation marks omitted).

Kris alleges that at some point in January 2018, following her January 4 letter, the Dusseaults visited her apartment and were "angry because [she] reported them to the housing authority." Doc. no. 1-2 at 35. Kris further alleges that the Dusseaults verbally assaulted her and that Frances "dug her

15

nails into [Kris's] arm and pushed it out of the way."  Id. Construed favorably, this alleged conduct was designed to compel, or put pressure on, Kris to refrain from filing further reports with the MHRA.  These facts are sufficient to allege an "adverse action" under the FHA.  See Lloyd, 251 F. Supp. 3d at 905 (considering increased vandalism of plaintiff's property an "adverse action").

Additionally, Kris alleges that her eviction was retaliatory.  Initiation of eviction proceedings is widely considered an "adverse action" under the FHA.  See, e.g., Byrd v. Grove St. Mgmt. Corp., No. 6:16-CV-6017(MAT), 2018 WL 3110219, at *3 (W.D.N.Y. June 25, 2018) (citing cases in support of proposition that "[c]ourts in this Circuit and elsewhere have found that an eviction proceeding can constitute an adverse action under Section 3617"); DeSouza v. Park W. Apartments, Inc., No. 3:15-CV-01668 (MPS), 2018 WL 2990099, at *11 (D. Conn. June 14, 2018) (finding that initiation of eviction proceedings against plaintiff constituted an "adverse action" and collecting cases in support).  Thus, Kris has alleged sufficient facts to establish that defendants subjected her to an adverse action.

III. Causal Connection

Finally, to set out a claim of retaliation under the FHA, a plaintiff must allege enough facts to establish a causal

16

connection between plaintiff's protected activity and defendant's adverse action.  See Wetzel, 901 F.3d at 868.  A plaintiff may show this connection directly with evidence of defendant's retaliatory motive, such as a statement indicating defendant's retaliatory motive for taking the adverse action.  See DeSouza, 2018 WL 2990099, at *12.  Or, a plaintiff may illustrate this connection more indirectly by "showing that the protected activity was closely followed in time by the adverse action."  Id. (internal quotation marks omitted); see also Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012) (stating, in Title VII context, that "[v]ery close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection" (internal quotation marks omitted)).

Kris has alleged facts supporting both types of proof of a causal connection.  She alleges that shortly after she sent her January 4 letter to the MHRA, the Dusseaults subjected her to the adverse action of verbally assaulting her and engaging her in unwanted physical contact.  She further alleges that the Dusseaults' visit to her apartment was because they were "angry" she "reported them to the housing authority" and that, during the visit, they "admonish[ed]" her for making those reports.  Doc. no. 1-2 at 35.  Although Kris does not directly allege that the Dusseaults made a statement evidencing their retaliatory

17

motive, her allegations give rise to the inference that they did so.

Further, both the Dusseaults' visit to Kris's apartment and the initiation of eviction proceedings against her occurred close in time to her January 4 letter. Kris sent her letter, which constitutes protected activity, to the MHRA on January 4, 2018. The Dusseaults visited her apartment and engaged in adverse action shortly thereafter—at some point in January 2018. And defendants' initiation of eviction proceedings occurred only two months after the January 4 letter, on March 2, 2018. Doc. no. 1-2 at 26-29. A period of one or two months between Kris's protected activity and defendants' adverse action is close enough to suggest a causal connection at the motion to dismiss stage. See DeSouza, 2018 WL 2990099, at *12 (finding sufficient evidence of causation when defendants initiated eviction proceedings about one month after receiving notice of plaintiff's HUD complaint); see also Sanchez-Rodriguez, 673 F.3d at 15 (finding three month proximity of protected activity and adverse action sufficient to suggest causation in Title VII claim); cf. Lloyd, 251 F. Supp. 3d at 906 (finding fourteen-month time period between protected activity and adverse action insufficient to create inference of causation). Thus, Kris has alleged enough facts to show a causal connection between her protected activity and defendants' adverse actions.

18

In sum, Kris has alleged sufficient facts for her FHA retaliation claim to survive a motion to dismiss. To the extent Kris's retaliation claim is based on protected activity other than that discussed above (e.g., her other letters to the MHRA, complaints to HUD, or reports to police) and other adverse actions (e.g., the landlord's failure to make repairs and return her security deposit), the court need not address those factual bases for her claim at this stage of the case. The parties should more fully address all the factual underpinnings of Kris's FHA retaliation claim at the summary judgment phase.

**CONCLUSION**

For the foregoing reasons, the court denies defendants' motion to dismiss (doc. no. 15).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 24, 2019

cc: Margaret Kris, pro se
    Brian C. Shaughnessy, Esq.

19