**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Margaret Kris

    v.                                    Case No. 18-cv-566-LM

Dusseault Family Revocable Trust et al.

**REPORT AND RECOMMENDATION**

Before the court are pro se plaintiff Margaret Kris's

"Motion for Reconsideration of Claim 1" (Doc. No. 51), "Motion

for Proposed Complaint Amendment to State FHA Reasonable

Accommodation Claim against the MHRA" (Doc. No. 62), and "Motion

to Revise Claim to Include FHA Claim against HUD and MHRA for

Failing to Execute Duties under FHA 42 U.S.C. § 3610" (Doc. No.

63).

**Background**

This case arises out of Ms. Kris's rental of a Manchester

apartment owned by the defendants (hereinafter "the Dusseaults")

and her eviction from that apartment during the term of a one-

year lease signed in September 2017.  Her rent in that apartment

was subsidized under the Department of Housing and Urban

Development ("HUD") Section 8 voucher program, administered by

the Manchester Housing and Redevelopment Authority ("MHRA"), a local public housing authority in the City of Manchester.[1]

Shortly after she moved into the apartment, Ms. Kris saw bug traps in her apartment and became aware that the building had bed bugs.  Concerned for her health and the health of the cat she had for emotional support, Ms. Kris filled out a "reasonable accommodation" request form and submitted that form to the MHRA on October 5, 2017.  On that form, Ms. Kris described her disability and her request as follows:

> I have a concern if the building requires
> extermination.  I have a breathing issue COPD as well
> as a support animal that cannot breathe these
> chemicals on a regular basis.

Doc. No. 51-1, at 13.  On October 26, 2017, the MHRA faxed a request to Ms. Kris's primary care provider asking for information relating to Ms. Kris's request.  In a December 19, 2017 letter addressed to Ms. Butterworth at the MHRA, Ms. Kris repeated that she was concerned that she and her cat would be exposed to chemical pesticides, and she requested assistance with that issue.

---

[1]"Under the Section 8 Federal Housing Choice Voucher Program . . . HUD provides housing assistance funding to state and local public housing authorities, which in turn administer the Program at the local level by making rent subsidy payments to landlords on behalf of participating tenants." DeCambre v. Brookline Hous. Auth., 826 F.3d 1, 4 (1st Cir. 2016) (citing 24 C.F.R. § 982.1(a)(1)-(2)).

Ms. Kris further alleges that she clarified to Ms. Butterworth in phone calls that the accommodation she was requesting was the opportunity to break her lease early, so she could move out in spring 2018, and then apply her Section 8 housing voucher to another apartment.  Ms. Kris claims that her conversations with Ms. Butterworth led her to believe that the MHRA had granted her request.  A November 13, 2017 handwritten notation in Ms. Kris's MHRA housing file, states, however, "Talk to Margaret [Kris].  She is canceling until spring now!!"  Doc. No. 51-1, at 3.  That note suggests that the MHRA may have considered Ms. Kris's request for help with early lease termination to have been withdrawn or postponed until spring.

The Dusseaults filed a petition in the New Hampshire Circuit Court, District Division-Manchester ("Manchester District Court") to evict Ms. Kris for nonpayment of rent in late February/March 2018.  In an April 17, 2018 letter copied to Ms. Kris's MHRA housing file, Ms. Butterworth notified Ms. Kris that further progress on the request to terminate her lease and move out would not occur while the eviction petition remained pending.

The Manchester District Court granted the Dusseaults' eviction petition in March 2018.  The New Hampshire Supreme Court declined Ms. Kris's appeal of that decision.  The Manchester District Court then issued a writ of possession in

July 2018, and Ms. Kris was locked out of the apartment by the
Sheriff's Department on July 11, 2018.  See Doc. No. 63, at 23.


II.   Termination of Section 8 Housing Voucher

The MHRA sent a letter to Ms. Kris, dated October 3, 2018,
stating that her Section 8 housing voucher would be terminated,
effective November 4, 2018, because of her eviction.  See Doc.
No. 58, at 6.  Ms. Kris appealed that decision.  See id. at 7.
Following a hearing on October 31, 2018, an MHRA hearing officer
upheld the termination of Ms. Kris's Section 8 housing voucher
based on her eviction for nonpayment of rent, which, the hearing
officer concluded, amounted to proof that she had failed to
comply with the material terms of her lease.  Ms. Kris received
notice of that decision in a letter dated November 7, 2018.  See
id. at 10.


III. HUD Inquiries

Ms. Kris filed an administrative complaint in March 2018,
asking HUD to investigate her claims that the Dusseaults had
discriminated against her on the basis of her disability and had
retaliated against her, in violation of the Fair Housing Act
("FHA").  HUD notified Ms. Kris, in a letter dated August 27,
2018, that the agency concluded that her "situation is not
covered under the Fair Housing Act but may be covered by local

consumer protection laws," and that HUD was "unable to initiate an investigation under the Fair Housing Act."[2]  Doc. No. 32, at 6; Doc. No. 63, at 17.  Her request for reconsideration of that determination was denied.  See Feb. 21, 2019 Ltr. (Doc. No. 21, at 5).

Ms. Kris sent further inquiries to HUD in 2019-2020, including a July 25, 2020 letter and a "White House inquiry" she instituted.  See Doc. No. 54, at 1; Doc. No. 53, at 7; Doc. No. 63, at 2-3.  She received a response from the HUD Boston Regional Office, dated August 17, 2020, stating that the Office of Fair Housing and Equal Opportunity had assessed her inquiries and determined that HUD did not have jurisdiction to file and investigate her claims.  See Doc. No. 53, at 7.

IV.  Procedural History of this Case

Ms. Kris filed this civil action on June 20, 2018, naming both HUD and the Dusseaults as defendants.  Her claims against HUD sought mandamus relief relating to what she claimed was that

---

[2]The August 2018 letter referred Ms. Kris to the Rhode Island Attorney General's Office, an apparent error.  See Doc. No. 63, at 17.  The February 21, 2019 letter setting forth HUD's denial of Ms. Kris's request for reconsideration of the decision set forth in that August 2018 letter acknowledged that although there were "weaknesses" in that decision, the August 2018 decision to close the case was "consistent with the full evidentiary record and . . . sufficiently supported by the totality of the facts."  Doc. No. 21, at 5.

agency's failure to process her administrative complaint on the
timetable specified in the FHA.  This court directed service of
the FHA claims on the Dusseaults, but dismissed Ms. Kris's
mandamus claim as mooted by HUD's decision to close the
investigation.  See Sept. 6, 2019 Order (Doc. No. 31).

In August 2020, Ms. Kris filed her initial motion (Doc. No.
51) seeking to reinstate a mandamus claim against HUD, which
this court liberally construed as also intending to add an FHA
reasonable accommodation claim against the MHRA.  See Dec. 11,
2020 (Doc. No. 61).  The court took that motion (Doc. No. 51)
under advisement and granted Ms. Kris leave to plead sufficient
facts to state a reasonable accommodation claim against the
MHRA.  Ms. Kris filed two motions thereafter (Doc. Nos. 62, 63),
which, along with Document No. 51, are before this court for
disposition.

## Discussion

### I.   Applicable Standard

The motions at issue (Doc. Nos. 51, 62, 63) seek to amend
the complaint to add new allegations, to join the MHRA and HUD
as parties, to add new claims against them, and to reinstate her
previously-dismissed mandamus claim.  "The court should freely
give leave [to amend a complaint] when justice so requires."
Fed. R. Civ. P. 15(a)(2).  A district court may deny leave to

amend, however, when adding the new claim would be futile.
Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir.
2013). To assess whether a proposed amendment is futile, this
court applies the standard for preliminary review under 28
U.S.C. § 1915(e)(2), set forth in the Aug. 6, 2018 Report and
Recommendation ("R&R") (Doc. No. 6).

Where a proposed amendment also seeks to join a party, that
request is "'technically governed by Rule 21, which provides
that the court may at any time, on just terms, add or drop a
party.'" Gigunda Grp., Inc. v. Creative Collective Grp., No.
15-cv-104-LM, 2015 WL 6872281, at *1, 2015 U.S. Dist. LEXIS
151771, at *4 (D.N.H. Nov. 9, 2015) (citation omitted). "'[T]he
same standard of liberality applies'" under both Rule 15(a) and
Rule 21. Id. (citation omitted). In conducting its review of
the proposed complaint amendments, the court takes into
consideration all of the relevant exhibits and factual
allegations set forth in Ms. Kris's prior filings and in
Document Nos. 51, 53-59, and 62-63.

## II. Mandamus Claims

### A.   Prerequisites to Obtaining Mandamus Relief

The writ of mandamus is an extraordinary remedy to be
invoked only in exceptional circumstances. See In re City of
Fall River, 470 F.3d 30, 32 (1st Cir. 2006). The statute that

provides this court with mandamus jurisdiction, 28 U.S.C. § 1361, provides that federal courts have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  To be entitled to mandamus relief, "a movant must show that: (1) [her] claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other remedy offering adequate relief is available."  Khitab v. Novak, 524 F. Supp. 2d 105, 106–07 (D. Mass. 2007); see also Georges v. Quinn, 853 F.2d 994, 995 (1st Cir. 1988).  Therefore, to the extent Ms. Kris seeks to add a mandamus claim to this action under 28 U.S.C. § 1361, she must plead facts showing that a federal agency or federal officer failed to perform a clearly prescribed, nondiscretionary, ministerial duty, and that no adequate remedy is available short of compelling the officer or agency to perform the duty.

    B.   HUD

    This court previously found that HUD's final decision closing Ms. Kris's original administrative complaint mooted the mandamus claim against HUD which she had asserted in her original complaint.  The new facts pleaded in Document Nos. 51-54 and 62-63, with respect to HUD, indicate that Ms. Kris filed

a new administrative inquiry in July 2020, which that agency determined a month later was not within its jurisdiction to handle.  There are no facts pleaded by Ms. Kris that demonstrate that HUD has failed to perform any ministerial or nondiscretionary duty owed to her with regard to HUD's responsibilities under her FHA complaints and agency inquiries. Accordingly, the district judge should deny as futile Ms. Kris's motions (Doc. Nos. 51, 62-63), to the extent they seek to add or reinstate a mandamus claim against HUD in this action.

     C.    <u>MHRA</u>

In Document Nos. 51 and 63, Ms. Kris has claimed that mandamus relief is available as to the MHRA, for its failure to properly process and grant her request for a reasonable accommodation.  In addition, in Document Nos. 62 and 63, she has claimed that mandamus relief is available for the MHRA's alleged failure to execute duties under 42 U.S.C. § 3610, and to provide her with a copy of her complete MHRA housing file before the October 2018 hearing that resulted in the cancellation of her Section 8 housing voucher.

The MHRA is a public corporation created under state law. See N.H. Rev. Stat. Ann. § 203:3, I.  Ms. Kris has not alleged facts showing that the MHRA is a federal agency with respect to

any nondiscretionary, ministerial duty at issue, for purposes of the Mandamus Act.

Moreover, Ms. Kris's lease obligations have long since ended; the MHRA ultimately produced all of her housing file to her, see Doc. No. 21, at 4; and HUD closed its investigations of her FHA complaint and inquiries.  Any duty that could have arisen with respect to federal agency delays in those matters, no longer exists.  The district judge should deny Ms. Kris's motions (Doc. Nos. 51, 62-63), to the extent they seek to add mandamus claims against the MHRA, as futile.


III. Reasonable Accommodation Claim

Construed liberally, the motion to reconsider (Doc. No. 51) and the motion to amend (Doc. No. 62) also seek leave to add an FHA reasonable accommodation claim against the MHRA, based on that agency's failure to grant Ms. Kris's request to terminate her lease in spring 2018 because of the potential impact of chemical pesticides on her and her emotional support animal's health.  Section 3604 of the FHA provides, in pertinent part, that it shall be unlawful to "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person [with a qualified 'handicap'] equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(2)-(3).

> To establish a prima facie case of failure to
> accommodate under the [FHA], a claimant must show that
> [she] is handicapped within the purview of [the FHA,
> 42 U.S.C. § 3602(h)] and that the party charged knew
> or should reasonably have known of [the claimant's]
> handicap. . . .  Next the claimant must show that
> [she] requested a particular accommodation that is
> both reasonable and necessary to allow [her] an equal
> opportunity to use and enjoy the housing in question.
> . . .  Finally, the claimant must show that the party
> charged refused to make the requested accommodation.

Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010) (citations omitted); see also Vorchheimer v. Philadelphian Owners Ass'n, 903 F.3d 100, 111 (3d Cir. 2018) ("To survive a motion to dismiss, a plaintiff [claiming a failure to provide a reasonable accommodation] need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity."); Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City, 685 F.3d 917, 923 (10th Cir. 2012) ("Put simply, the statute requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without.").

Ms. Kris has plausibly alleged both that the MHRA was aware she had one or more disabilities that could qualify as a "handicap" for purposes of the FHA, and that she had requested MHRA assistance in terminating her lease in spring 2018 due to her concerns about the negative impact of pesticide exposure on

her COPD and on the health of her support animal.  She has also
pleaded facts, in Document No. 62, indicating that there were
bug traps in her apartment during her tenancy, which were
checked periodically by employees of an exterminator.  In
addition, she has alleged that on one occasion she saw a tenant
in a neighboring unit throw out furniture after the
exterminator's truck had been parked in the driveway longer than
necessary to check bug traps, which led her to conclude that the
neighbor's unit had been treated for bed bugs.  She has also
pleaded facts indicating that some people have allergic
reactions to bed bugs, that she was fearful that her own unit
could become infested, and that she did not know where she would
go with her cat for several hours or longer if she needed to
leave her unit so that it could be treated.  She further alleges
that the situation made her anxious, although she has not
pleaded facts suggesting that she requested assistance with
early termination of her lease as an accommodation of her
anxiety disorder.  Without more, Ms. Kris's allegations about
her concerns fail to state a claim that assisting her in
terminating the lease early was indispensable, essential, or
otherwise "necessary" to allow her an equal opportunity to enjoy
her housing.  Ms. Kris has thus failed to state an FHA
reasonable accommodation claim upon which relief can be granted.

Accordingly, the district judge should deny, as futile, Ms. Kris's motion to join the MHRA as a defendant to that claim.

## Conclusion

For the foregoing reasons, the district judge should deny Doc. Nos. 51, 62, and 63.  Any objections to this R&R must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2); LR 7.2(d).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

February 19, 2021

cc:  Margaret Kris, pro se
     Brian C. Shaughnessy, Esq.