UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Margaret Kris</u>

    v.                                              Civil No. 18-cv-566-LM
                                                   Opinion No. 2022 DNH 035 P

<u>Dusseault Family Revocable
Trust et al.</u>

**O R D E R**

Before the court is pro se plaintiff Margaret Kris's motion for summary judgment (doc. no. 70) on the claims remaining in this case. Defendants – the Dusseault Family Revocable Trust of 2017 ("Trust") and Charlene and Frances Dusseault ("Dusseaults") – have filed an objection (doc. no. 71). Kris filed a reply (doc. no. 72).

**BACKGROUND**[1]

I.     <u>Lease, Complaints, Eviction, and Consequences</u>

This case arises from Kris's rental of—and eviction from—an apartment in Manchester, New Hampshire, in a building owned and managed by defendants. Kris signed the lease and began living in the apartment in September 2017. She was evicted less than a year later, in June 2018, when defendants obtained a writ of possession. For the duration of Kris's tenancy, the U.S. Department of Housing and

---

[1] The background facts summarized in this order are undisputed, except as otherwise indicated.

Urban Development ("HUD") subsidized her rent through the Section 8 voucher program, administered by the Manchester Housing and Redevelopment Authority ("MHRA").[2]  Kris filed complaints against defendants to the MHRA, and she claims that defendants retaliated against her by evicting her and subjecting her to other adverse actions, in violation of her rights under the Fair Housing Act ("FHA").

Kris lives with disabilities, including a hearing impairment, breathing issues (chronic obstructive pulmonary disease ("COPD")), and mental health issues.  When she lived in defendants' building, Kris kept a cat for emotional support.

At different times in 2017 and 2018, Kris sent texts to Frances Dusseault and/or her adult daughters Charlene and Joanne, concerning the rent, the condition of the apartment, and other building issues.  She also corresponded with staff at the MHRA.  Relevantly, Kris submitted a "reasonable accommodation" request form to the MHRA in October 2017, stating that she was concerned that the apartment might need bedbug extermination, and that chemical exposure could affect her COPD and harm her support animal (her cat).  Doc. no. 1-1, at 38.

Next, on December 11, 2017, Kris wrote a letter to the MHRA about a lack of heat, inadequate snow and ice removal, the behavior of other tenants, and the

---

[2] "Under the Section 8 Federal Housing Choice Voucher Program . . . HUD provides housing assistance funding to state and local public housing authorities, which in turn administer the Program at the local level by making rent subsidy payments to landlords on behalf of participating tenants."  DeCambre v. Brookline Hous. Auth., 826 F.3d 1, 4 (1st Cir. 2016) (citing 24 C.F.R. § 982.1(a)(1)–(2)).

number of people collecting her rent.  Doc. no. 1-1, at 39.  That same day,[3] after Kris had complained about the lack of heat, the Dusseaults came to see Kris in her apartment, without providing a full day's notice of their visit.  See doc. no. 1-2 at 33; doc. no. 70, at 2-3.  Shouting ensued.

The specifics of that interaction are disputed.  Kris alleges that the Dusseaults "admonished" her for reporting them to the MHRA and "verbally assault[ed]" her.  See doc. no. 1-2 at 33; doc. no. 70, at 2.  In addition, she asserts that Frances Dusseault "dug her nails" into Kris's arm and pushed Kris's arm away, as Kris approached her while carrying a cup to a nearby sink.  See doc. no. 1-2, at 33; doc. no. 70, at 2.

The Dusseaults assert that when they went to the apartment after receiving notice of a lack of heat, Kris became confrontational and aggressive.  The Dusseaults deny that any assault or coercion occurred.  Doc. no. 36.

A few weeks later, in early January 2018, Kris wrote a letter to the MHRA stating that the Dusseaults were not providing adequate notice of snow removal because they were relying on the snowplow's horn to alert tenants that they needed to move their cars out of the driveway.  Kris explained that the deafness in her left

---

[3] This court previously gleaned from the record before it when it ruled on defendants' motion to dismiss, that the incident in Kris's kitchen occurred in January 2018.  For purposes of ruling on her motion for summary judgment, the court accepts as undisputed Kris's statement in her summary judgment papers that the incident occurred on December 11, 2017, the same day she wrote the letter to the MHRA complaining about the heat and other building issues.

ear made it hard to hear the horn.  See doc. no. 1-1, at 45; see also doc. no. 1-2, at 16.

Defendants have made an offer of proof that the snowplow operator was not acting at their direction in honking the horn to announce the plow's arrival.[4]  See doc. no. 73, at 2.  Further, defendants have asserted that:

> Charlene Dusseault will deny that the Defendants had any knowledge regarding the Plaintiff's complaint to the MHRA regarding a hearing impairment in connection with snow plowing activities . . . .

Id.

Kris has asserted that, after "[Frances] put her hands on me," the Dusseaults stopped responding to her maintenance requests.  Doc. no. 1-1 at 31, 40.  On February 1, Kris began to withhold rent.  In a text to Joanne Dusseault, a week later, see doc. no. 1-2, at 19, Kris said she would withhold rent until issues she had raised concerning other tenants and sublessees were addressed.  The next month, Kris sent a letter to the MHRA stating that she would not pay the rent until building issues were addressed, repairs were made, and she received contact information for the Dusseaults' attorney.  Doc. no. 1-1 at 31, 40.

In late February, the Trust notified Kris in writing of its intent to seek her eviction and a writ of possession if she did not abandon the premises by March 1.  See doc. no. 1-2, at 26.  On March 2, when Kris did not move out, the Trust, through

---

[4] A "Winter Plowing Notice," dated December 16, 2017, states that shoveling and plowing contractors had been hired, and that tenants must move their cars away from walks, steps, and the driveway during "plowable snowstorms of 3 inches or more."  Doc. no. 1-1, at 44.

4

its attorney, filed an eviction proceeding in the N.H. Circuit Court, 9th Circuit, District Division ("Manchester District Court"), seeking a writ of possession under N.H. Rev. Stat. Ann. ("RSA") 540:13, for nonpayment of rent. See Dusseault Fam. Rev. Tr. of 2017 v. Kris, No. 456-2018-LT-00234 (Manchester District Court); see also doc. no. 70, at 18.

Anticipating her eviction, Kris obtained an FHA Discrimination Complaint from the MHRA and mailed it to HUD's Boston office in late March. Doc. no. 1-1 at 17. She checked boxes on the form indicating that she had suffered discrimination on multiple bases, including her disabilities. She further claimed she had been evicted because she withheld rent for repairs, and that her landlord verbally and physically assaulted her, and failed to respond to her maintenance requests.[5] In response, HUD issued a "Determination of No Valid Issues" letter to Kris, stating that, after an inquiry, the agency had concluded that her claims were not covered by the FHA, and that her case had been closed. See doc. no. 32, at 6.

Meanwhile, after a hearing on March 23, the Manchester District Court issued a judgment in favor of the Trust in the eviction proceeding, specifically finding that Kris (1) had not paid the rent, (2) had withheld rent for "reasons

---

[5] The HUD form also includes Kris's handwritten notes stating that the landlord had "misrepresented about bug infestation" and had "caused [her] to lose electrical assistance." Doc. no. 1-1, at 17. Claims regarding those issues, and Kris's claims of violations of her rights under the Americans with Disabilities Act, did not survive the court's preliminary review of the complaint, undertaken pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2). See Sept. 6, 2019 Order (doc. no. 31) (approving Aug. 6, 2018 R&R (doc. no. 6)).

5

outside the scope" of RSA Ch. 540-A[6], and (3) had "rejected attempts to fix the electrical problem she claim[ed]." Doc. no. 70, at 20. Although Kris brought two money orders to that hearing, with which she intended to pay the withheld rent, the Trust did not accept those money orders as satisfaction of its claim for repossession.[7] Kris then paid rent into a state court account for the months she remained in the apartment while her appeal of the Manchester District Court's decision was pending.

The New Hampshire Supreme Court declined to hear Kris's appeal. See Dusseault Fam. Rev. Tr. of 2017 v. Kris, No. 2018-0215 (N.H. June 13, 2018) (doc. no. 1-1 at 10). The Trust then obtained a writ of possession from the Manchester District Court, and the Hillsborough County Sheriff's Department locked the apartment and posted a "Sheriff's Notice" at the apartment, pursuant to that writ.

---

[6] RSA Ch. 540-A prohibits certain willful acts of the landlord, including willful violation of the tenant's right of quiet enjoyment, willful disruption of utility service, willful failure to investigate complaints of insect infestation, and willful entry without the tenant's consent, except to undertake emergency repairs. See RSA 540-A:2, -A:3.

[7] Kris points to the current version of state law, RSA 540-A:9, I (eff. 2021) in arguing that the state court proceeding should have been dismissed because she was prepared to pay the overdue rent during the March 23, 2018 hearing. At the time of the eviction proceeding, however, RSA 540-A:9 provided, in pertinent part, that if such payment were tendered and accepted "before the expiration of the notice," the eviction proceeding would be dismissed. Id. (2018 version) (emphasis added). It is undisputed that Kris did not offer to pay the overdue rent until several weeks after the expiration of the notice advising her to vacate the premises.

On July 11, Kris re-entered the locked apartment, despite the Sheriff's notice. The Manchester Police Department arrested her and charged her with criminal trespass, resisting arrest, and disorderly conduct. Doc. no. 70, at 32.

Kris had received a notice in late June stating that her security deposit would be withheld. In late July, Frances Dusseault sent Kris a notice stating that the cost of repairs and cleaning, and the amount of unpaid rent, exceeded the value of her deposit. See doc. no. 70, at 29. Kris has disputed that accounting. See generally doc. no. 49.

II. Procedural History

Kris filed this lawsuit on June 20, 2018, asserting FHA violations, violations of the Americans with Disabilities Act, violations of HUD regulations, challenges to the state court eviction proceedings, and violations of her federal constitutional rights. Following the court's preliminary review of her complaint, see 28 U.S.C. § 1915(e)(2) and LR 4.3(d), many of Kris's claims were dismissed, and almost all of the defendants whom Kris named (including HUD) were dropped from the case, leaving only claims against the Dusseaults and the Trust,[8] which this court previously summarized as follows:

> Kris alleges that, after learning that she had complained to the MHRA and HUD, defendants retaliated against her for that conduct. Specifically, she contends that the retaliation included: (1) Charlene

---

[8] Kris's "Motion to Change Claim" (doc. no. 66) seeks to add new claims and join the MHRA, a component of HUD, and two municipalities as new defendants. That motion is addressed in a separate order.

7

  and Frances Dusseault's verbal assault of [Kris] at her apartment and
  Frances's physical assault of Kris; (2) the landlord's failure to respond
  to [Kris's] complaints about maintenance and other issues at the
  apartment complex; (3) the landlord's eviction of Kris; and (4) the
  landlord's failure to return [Kris's] security deposit.

Kris v. Dusseault Fam. Rev. Tr. of 2017, No. 18-cv-566-LM, 2019 WL 4647211, at

*5, 2019 U.S. Dist. LEXIS 163029, *12 (D.N.H. Sept. 24, 2019) ("Sept. 24 Order")

(doc. no. 33). The court refers to those claims as Claims 1-4.

  Defendants, who have not yet filed their answer in this action,[9] set forth their

theory of the case in their proposed discovery plan, as follows:

  The Defendants deny that they had any knowledge that the Plaintiff
  had a disabling condition, that the Plaintiff requested any
  accommodation, or that any actions the Plaintiff alleges in her
  complaint were connected in any way to a disabling condition or
  retaliation. . . . The Defendants state that the eviction action was
  based solely on the nonpayment of rent and that there was no assault
  or coercion. . . .

Doc. no. 36, at 1- 2.

---

  [9] In general, a defendant in a civil case is required to file and serve an answer to the complaint, or a motion to dismiss the complaint, within twenty-one days of the date they are served with a complaint, see Fed. R. Civ. P. 12(a)(1)(A)(i) & 12(b)(4)(A). When a defendant "has failed to plead or otherwise defend," upon the appropriate showing, the clerk's office is required to enter the defendant's default. Fed. R. Civ. P. 55(a). Here, the defendants have "otherwise defend[ed]" in response to the complaint, as required by Rule 55(a), by litigating their motion to dismiss; filing a discovery plan setting forth their theory of the case; participating in settlement discussions while the case was stayed around the time their answer was due; and filing an objection to the plaintiff's motion for summary judgment, stating the reasons why plaintiff is not entitled to summary judgment on her claims, including their assertion of res judicata resulting from the state court judgment. The court can ascertain no prejudice accruing to Ms. Kris from Defendants' failure to file an answer. Under such circumstances, any entry of default against Defendants would almost certainly be set aside upon defendants' motion, and thus entering a default under the circumstances would likely be futile. To close the pleadings properly, the court directs defendants to file their answer to the complaint (doc. no. 1) no later than fourteen days from the date of this order.

8

On December 18, 2018, defendants moved to dismiss Kris's FHA retaliation claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This court denied the motion, finding that Kris had stated one or more actionable claims of FHA retaliation, arising from her complaint to the MHRA regarding the snowplowing notice and her partial deafness, the alleged assault by Frances Dusseault, and her eviction. See Sept. 24 Order, 2019 WL 4647211, at *5-*7, 2019 U.S. Dist. LEXIS 163029, at *12-*18. The court stopped short of deciding if any of Kris's remaining claims must be dismissed, and instead directed the parties to address the factual underpinnings of all of Kris's remaining claims at the summary judgment phase. See id., 2019 WL 4647211, at *7, 2019 U.S. Dist. LEXIS 163029, at *19.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Joseph v. Lincare, Inc., 989 F. 3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, by, among other things, citing to parts of the record to demonstrate the absence of a material factual dispute or showing that the non-movant "cannot produce admissible evidence" to support the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In ruling on a summary

9

judgment motion, the court construes the record in the light most favorable to the nonmoving party. Thompson v. Gold Medal Bakery, Inc., 989 F.3d 135, 141 (1st Cir. 2021). If the movant bears the burden of proof at trial, the movant "must demonstrate every element of [her] case such that 'no reasonable trier of fact could find other than for [her].'" Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015).

## DISCUSSION

I.  Legal Landscape

The FHA makes it unlawful to discriminate in "the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). The statute further defines disability discrimination to include the refusal to make reasonable accommodations to policies as necessary to afford a person with disabilities the opportunity to use and enjoy a dwelling. Id. § 3604(f)(3).

The FHA's anti-retaliation provision protects an individual's ability to request a reasonable accommodation or to report discriminatory housing practices, as follows:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the anti-discrimination provisions of the FHA].

10

42 U.S.C. § 3617.  The FHA allows any person who claims to have been injured by a "discriminatory housing practice" (defined by the statute to include violations of § 3617) to file a civil action for relief.  See id. § 3613(a)(1)(A); see also id. § 3602(f), (i).

Kris's burden of proof on her FHA retaliation claims is to establish that retaliation was the "but-for" cause of the adverse action she suffered.  See Taylor v. Nat'l Invs., Ltd., No. CV 17-117 WES, 2022 WL 306367, at *6, 2022 U.S. Dist. LEXIS 18662, at *16 (D.R.I. Feb. 2, 2022).  Although there is no First Circuit decision regarding what level of causation the plaintiff in an FHA retaliation case must show (i.e., but-for cause or merely that retaliation was one of several motivating factors) a recent District of Rhode Island decision notes that the "clear majority of courts to have considered the question" have concluded "that retaliation claims under the FHA require a showing of but-for causation." Id. at 6.  Moreover, a First Circuit case construing a similarly-worded anti-discrimination statute, see Palmquist v. Shinseki, 689 F.3d 66, 74 (1st Cir. 2012), provides strong support for this court's conclusion that § 3617 requires proof of but-for causation.  Finally, the Supreme Court recently noted that the "'but for' common law causation test" is [the] "'default' or 'background' rule against which Congress is normally presumed to have legislated" in creating federal causes of action in antidiscrimination statutes.  See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014 (2020);  see also Robert G. Schwemm, "Fair Housing and the Causation Standard After Comcast," 66 Vill. L. Rev. 63, 98-99 (2021) (where controlling cases do not

11

dictate otherwise, courts applying Comcast and Gross may conclude that FHA retaliation claims are governed by but-for standard).

Kris, therefore, must show that defendants would not have subjected her to the adverse actions alleged in Claims 1-4 (a verbal and physical assault, failure to respond to complaints regarding maintenance and other issues at her apartment, eviction, and the failure to return her security deposit) but for her engagement in activities protected by the FHA.

A defendant's retaliatory motive and the requisite causal connection between motive and the adverse acts alleged can be established by direct or indirect evidence. See S. Middlesex Opportunity Council v. Town of Framingham, 752 F. Supp. 2d 85, 96 (D. Mass. 2010). Direct evidence of a retaliatory motive "is that which can be interpreted as an acknowledgment" of the defendant's intent. Id. (internal quotation marks and ellipses omitted). Such evidence may include the defendants' admissions they were acting in response to the plaintiff's complaints about housing discrimination. See id.

In cases where the plaintiff relies on indirect evidence of the defendant's motive to prove her claims of retaliation, courts apply the McDonnell Douglas burden-shifting rules. See Francis v. Kings Park Manor, Inc., 992 F.3d 67, 73 (2d Cir. 2021); Taylor, 2022 WL 306367, at *5, 2022 U.S. Dist. LEXIS 18662, at *14 (citation omitted); see generally McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973). The initial burden rests with the plaintiff, who must produce

12

evidence to establish her prima facie case. Taylor, 2022 WL 306367, at *5, 2022 U.S. Dist. LEXIS 18662, at *14.

To establish her prima facie case under § 3617, Kris "must show that: (1) [she] engaged in protected activity; (2) defendants took an adverse action; and (3) there was a causal link between the two." Id., 2022 WL 306367, at *5, 2022 U.S. Dist. LEXIS 18662, at *14 (footnote omitted). Protected activity can include requesting a reasonable accommodation, protesting discriminatory housing practices, or opposing practices the plaintiff reasonably and in good faith believed amounted to discriminatory housing practices. See Sept. 24 Order, 2019 WL 4647211, at *5, 2019 U.S. Dist. LEXIS 163029, at *12-13 (citing cases). An adverse action under § 3617 is conduct that a reasonable person would view "as coercive, intimidating, threatening, or interfering with the exercise of her protected right under the FHA." Geraci v. Union Square Condo. Ass'n, 891 F.3d 274, 277 (7th Cir. 2018).

A plaintiff who establishes her prima facie case at trial generates a presumption of a retaliatory motive, which defendants may rebut by producing evidence of a legitimate, non-retaliatory reason for their action. See Taylor, 2022 WL 306367, at *5, 2022 U.S. Dist. LEXIS 18662, at *14; see also Garmon v. AMTRAK, 844 F.3d 307, 313 (1st Cir. 2016) (Title VII case).

Once rebutted, the burden shifts back to the plaintiff to come forward with evidence to show that it is more likely than not that the defendant's claimed motive

13

was merely pretextual, and that retaliation was the true motive. See Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001).

II.   Plaintiff's Motion for Summary Judgment

   A.   Claim 1: Alleged Assault

In Claim 1, Kris asserts that the Dusseaults assaulted her verbally and physically on December 11, 2017, while admonishing her for her complaints to the MHRA. The timing of the incident is essentially undisputed: on or shortly after the date when Kris complained about the lack of heat.

Kris, as the moving party, can only attain summary judgment if the evidence she provides in support of her motion is "conclusive." Vargas v. Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998). If she does not demonstrate that the record is so one-sided as to rule out the prospect of defendants prevailing, "the court must deny the [summary judgment] motion, even if the opposing party has not introduced contradictory evidence in response." Travelers Cas. & Sur. Co. of Am. v. Vázquez Colón, No. 18-cv-1795 (GAG), 2021 WL 4267883, at *13, 2021 U.S. Dist. LEXIS 175858, at *42 (D.P.R. Sep. 15, 2021) (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2727.1 (4th ed. 2017)). Kris, as the party with the burden of proof, has not demonstrated by way of any "conclusive"

proof that she suffered the adverse, retaliatory acts she claims on December 11, 2017.[10]

Furthermore, Kris has quoted Frances Dusseault on December 11, 2017 as calling Kris "wrong," and saying that her own husband (Mr. Dusseault) had worked for "housing," doc. no. 70, at 2, suggesting that Frances may have considered herself a better authority on how to have her complaints addressed and what to raise to the MHRA. Such evidence, construed favorably to the non-movant, would not preclude a reasonable factfinder from determining that the Dusseaults' admonitions on December 11, 2017, were related to Kris's complaints to the MHRA about the lack of heat and other building issues. As, this court has previously concluded, in its order denying the motion to dismiss, that the December 11, 2017 complaint to the MHRA about the lack of heat and other building issues did not constitute protected activity under § 3617. See Sept. 24 Order, 2019 WL 4647211, at *5 n.1, 2019 U.S. Dist. LEXIS 163029, at *14 n.1. A reasonable factfinder could thus conclude that the Dusseaults' actions were not directly related to any protected activity that may have occurred previously. Kris, therefore, has not established the absence of disputed facts as to defendants' liability for FHA retaliation based on the alleged assault and admonitions. Accordingly, the court denies her motion for summary judgment on Claim 1.

---

[10] Kris's prior consistent statements could be admissible to show that her claims are not a recent fabrication, but those prior statements are not admissible as proof of the truth of their contents. Cf. Fed. R. Evid. 801(d)(1).

B.  Claim 2: Maintenance Requests

In Claim 2, Kris claims that defendants did not address her maintenance requests and other complaints of building problems after she complained to the MHRA. In particular, she has claimed that defendants stopped responding to her requests after the December 11, 2017 incident.

In analyzing questions of pretext and true motivation in retaliation cases, in the summary judgment context, courts may set aside the burden-shifting framework, looking instead at "the record as a whole," focusing on whether the plaintiff "adduced sufficient evidence to create a genuine issue as to whether retaliation was the real motive." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012) (citing cases) (Title VII case). Here, there is evidence that the pace of repairs and responses may have slowed or ended after December 11, 2017, for reasons other than a retaliatory motive prohibited by § 3617. Both parties have characterized the December 11, 2017 encounter as confrontational, although they disagree as to who was responsible or more culpable. The record as a whole is consistent with a finding that the deterioration of the landlord-tenant relationship, for reasons unrelated to any retaliatory motive, could have played a role in the claimed failure of the Dusseaults to answer Kris's requests after December 11, 2017.

In addition, Frances Dusseault's June 15, 2018 letter to the MHRA states that Kris interfered with the work of contractors hired by the Dusseaults to make

16

repairs by her outbursts ("screaming and swearing"), causing them to leave jobs unfinished. See doc. no. 70, at 26. The letter further states that Frances Dusseault's adult children, "who help with maintenance and repairs, no longer feel safe going to the building due to [Kris's] confrontations, accusations and foul language." Id.

While Kris has disputed the truth of that letter's aspersions and descriptions of her conduct, the relevant portions of that letter concerning maintenance and repairs comports with the findings of the Manchester District Court, that Kris had rejected attempts to fix the electrical problem she claimed. The record as a whole does not demonstrate conclusively that defendants' explanation for the failure to address her repair requests was pretextual. Accordingly, the court denies Kris's motion for summary judgment on Claim 2.

### C. Claim 3: Eviction

In Claim 3, Kris claims that her eviction was in retaliation for her complaints to the MHRA. She points to the landlord's failure to accept the money orders she brought with her to the hearing, and the timing of that proceeding.

Kris did not prevail in the state court landlord-tenant proceeding; she was found to have not paid the rent when it was due, and the landlord did not accept her offer to pay the overdue rent at the hearing. Cf. RSA 540:9 (2018); RSA 540:13, VII. Kris is precluded from challenging the validity of that final state court judgment, for reasons including collateral estoppel, res judicata, and the Rooker-Feldman

17

doctrine.  See Aug. 6 R&R, 2018 WL 4031342, at *8, 2018 U.S. Dist. LEXIS 219044, at *21-22 (Rooker-Feldman), R&R approved, Sept. 6, 2019 Order (doc. no. 31); see also 412 S. Broadway Realty, LLC v. Wolters, 169 N.H. 304, 313, 147 A.3d 417, 425 (2016) (res judicata); Gephart v. Daigneault, 137 N.H. 166, 172-73, 623 A.2d 1349, 1353 (1993) (collateral estoppel).

Because the state-court finding that she was properly evicted for non-payment of rent has a res judicata effect on her challenges to her eviction asserted here, Kris has not established that a retaliatory motive was the "but-for" cause of her eviction.  See Philippeaux v. Apt. Inv. & Mgmt. Co., 598 F. App'x 640, 645 (11th Cir. 2015) (where plaintiff "claimed that he was evicted because he requested the accommodation," but "the record establishes that the state court eviction action was triggered by [plaintiff's] failure to pay rent," causal connection was not shown). Accordingly, the court denies Kris's motion for summary judgment on Claim 3.

### D.  Claim 4:  Security Deposit

As to Claim 4, regarding the retention of her security deposit, state law allows a landlord to withhold part or all of a security deposit to cover unpaid rent or to pay for repairs exceeding normal wear and tear.  See RSA 540-A:7, I & II.  Kris did not pay the rent for February 2018 and March 2018 when it was due, and she has not disputed the amount of unpaid rent for those months.  Nor has she presented conclusive evidence that the value of her security deposit exceeded the cost of repairs or the value of her unpaid rent.  Although it is not clear on the record

18

here that defendants provided Kris with the accounting required by RSA 540-A:7 to recover amounts paid for repairs and cleaning, that fact does not impugn defendants' explanation that they retained her deposit to recoup unpaid rent. In light of the record as a whole, Kris has not demonstrated that Defendants' explanation is pretextual, and that unlawful retaliation was the true motive. Accordingly, the court denies Kris's motion for summary judgment on Claim 4.[11]

## CONCLUSION

For the foregoing reasons, the court:

1. Denies Kris's motion for summary judgment (doc. no. 70) in its entirety;

2. Directs defendants to file their answer to the complaint (doc. no. 1) within fourteen days of the date of this Order;

3. Directs defendants, within thirty days of the date of this Order, to move for summary judgment on Claims 2, 3, and 4, as identified in this Order, and to support their motion, as necessary, with affidavits or other submissions of evidentiary quality; and

---

[11] In her summary judgment briefs (see, e.g., doc. no. 72, at 3), Kris argues that defendants' failure to renew her lease is an adverse, retaliatory act that provides another basis for finding defendants liable under § 3617. Kris has not sought leave to add that claim to this case, and her summary judgment motion does not provide the proper vehicle for seeking such leave. But even if the claim were properly before this court on Kris's motion for summary judgment, the court would note that Frances Dusseault's June 15, 2018 letter notifying the MHRA of the decision regarding lease renewal refers to Kris's eviction and failure to pay rent, immediately after stating that her lease would not be renewed. Considering the record as a whole, including evidence that Kris was found to have breached her lease by not paying the rent as required, plaintiff has not demonstrated that those reasons are pretextual, and that retaliation prohibited by the FHA was the true reason for the refusal to renew the lease.

    4.   Directs the clerk's office to schedule a case management conference in this matter, before the magistrate judge, to place this matter on the court's trial calendar no later than September 2022.

SO ORDERED.

                                    _____
                                    Landya B. McCafferty
                                    United States District Judge

March 23, 2022

cc:    Margaret Kris, pro se
        Brian C. Shaughnessy, Esq.